442 A.2d 820

**COMMONWEALTH of Pennsylvania**

**v.**

**Terrence GALLAGHER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1981.

Filed March 12, 1982.

Petition for Allowance of Appeal Denied June 30, 1982.

 

Gwanita Hester, Assistant Public Defender, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, submitted a brief on behalf of Commonwealth, appellee.

Before WICKERSHAM, POPOVICH and WATKINS, JJ.

WATKINS, Judge:

This is a direct appeal from the judgment of sentence after revocation of appellant's probation. Appellant, Terrence Gallagher, filed a timely petition for reconsideration of his sentence which was denied. We affirm the decision of the court below.

Two issues are raised by appellant out of the following set of facts. On February 26, 1980, after a *Gagnon II* hearing,[1] appellant's probation of seven years was revoked. During the sentencing colloquy, the following exchange occurred between the appellant and the sentencing court:

[Appellant] "MR. GALLAGHER: You know, you are just *making a mockery out of justice.*

THE COURT: *I am?*

MR. GALLAGHER: *Yeah.*

THE COURT: *Well, just a minute. Come back here. I will add a little more time on to it.*

*I gave you three years and I will revoke that sentence. I will make it three and a half years to seven years.* [Appellant's Attorney] MR. *O'DRISCOLL* : Your Honor, if I might say that I think my client is in a distraught state. I would ask the Court to reconsider not adding anything additional to his sentence.

I think he is all raught (sic) up and I don't think that upon reflection he would say some of the things perhaps that he said to the Court.

1. Prior to revoking probation, a court must hold "(1) a preliminary hearing to determine whether there was probable cause to believe that [a defendant] has violated his probation and (2) a final hearing prior to the ultimate decision [to determine] whether his probation should be revoked. The preliminary hearing to establish probable cause is known as a *Gagnon I* hearing and the final hearing is known as a *Gagnon II* hearing." *Commonwealth v. Williams*, 272 Pa.Super. 308, 310, 415 A.2d 903, 904 (1979).

THE COURT: That is a matter for him to decide and not for you, Mr. O'Driscoll. I am sure you would not say them.

MR. O'DRISCOLL: I would just ask, Your Honor—

MR. GALLAGHER: Your Honor, I think that the bitterness that I feel towards the justice system you know, I can't help that. I can't help being bitter about the way I feel towards you people.

THE COURT: That is all right.

MR. GALLAGHER: The justice system.

THE COURT: I gave you probation. I made a grave mistake then but I am trying to correct it just now.

MR. GALLAGHER: What in your opinion—is it your honest opinion that prison is going to help me?

THE COURT: No, it isn't.

MR. GALLAGHER: Well, why don't you try to find something that is going to help me?

THE COURT: I am going to keep you out of society.

MR. GALLAGHER: Why don't you put me in a program that is five years long or something? Something that will be beneficial.

THE COURT: You will have a program up there. I understand they do have a program.

MR. GALLAGHER: Oh, yeah, work your butt off. That is your program. The program is all day, get up and go to work. That is all it is, Your Honor.

Do you call that a program?

THE COURT: I don't know. I have never, thank God, been in jail before.

MR. GALLAGHER: You see, I ain't trying to be a smart ass.

MR. GALLAGHER: The mockery part is that I can't see—you can honestly just sit there and say oh well, hell, go ahead and take another three and a half years of his life or three years or whatever.

THE COURT: I am trying to make an Order to make it perfectly clear to you that when you come out you don't start stealing—

MR. GALLAGHER: All you are doing is making me more bitter and more hatred upon me.

THE COURT: Well,—

MR. GALLAGHER: Your Honor, what would it take, you know, for me to get out and get so damn embittered with hatred that I just get a gun and just start shooting at people and say piss on everybody.

THE COURT: I think that is probably true. But I would not recommend it to you.

MR. GALLAGHER: No, I wouldn't recommend it either. You know, eventually it could happen.

THE COURT: Yes, I know. I am very sorry, sir, but you should have thought of all of this a long time ago. I gave you probation. I put you on seven years probation. What did you do? You came out and no sooner were you out but you were—

MR. GALLAGHER: Your Honor, in a just round about way, you are just telling me to shut up.

THE COURT: No, I am not."

Appellant contends that he was placed in jeopardy twice. He contends that the court below revoked the initial sentence imposed on the probation violation and subsequently imposed a harsher sentence as a direct result of appellant's criticism.

 Our Supreme Court has held that modification of a sentence imposed on a criminal defendant which increases the punishment constitutes a violation of the double jeopardy clause. *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971); cert. denied, 405 U.S. 1064, 92 S.Ct. 1490, 31 L.Ed.2d 794 (1972). The prosecution concedes that *Silverman* stands for the principle herein cited but contends that this principle is inapposite because there was only *one* sentencing order (i.e., the period of incarceration of three and one half to seven years) which was docketed by the Clerk of Courts of Montgomery County, the three year "sentence" having been orally imposed and *not* docketed was without legal effect. During the colloquy the court below initially

indicated that he would sentence the appellant to a term of imprisonment of three to seven years. However, after indicating this, the court imposed a final sentence of three and one-half to seven years based upon the defendant's conduct during the sentencing colloquy which clearly indicated the appellant's dangerous propensities, the fact that he had no remorse for his crimes and his utter contempt for the legal process. Such factors became known to the court during the sentencing colloquy. A criminal defendant's attitude, including a lack of contrition for his criminal conduct, is one of the proper criteria upon which a court may exercise its discretion in sentencing. Therefore, we hold that the court imposed but one sentence, that being three and one-half to seven years.

■ Appellant also claims that the sentence is unjustly harsh and manifestly excessive under the circumstances because the sentencing court failed to state on the record the reasons for the imposition of a sentence of total confinement. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Kostka*, 276 Pa.Superior Ct. 494, 119 A.2d 566 (1980); *Commonwealth v. Mallon*, 267 Pa.Super. 163, 406 A.2d 569 (1979). We cannot agree.

The colloquy reveals and the trial court's opinion adequately manifest a balanced consideration of the relevant factors which compelled the court to impose a sentence of total confinement. We quote from the court's opinion:

"Defendant flagrantly violated his probation. Six months from the time he was released from Federal prison, he was arrested and charged with the same type of criminal offenses for which he was originally placed on probation. It is obvious he is not likely to respond to further probationary treatment. Defendant was given an unusual opportunity to be decent but chose to continue his total disregard for authority and laws.

Anything other than total confinement would be inappropriate. Defendant has a long criminal record. He has done nothing to show that he has even barely attempted to alter his behavior. Restrictive measures are required in

order to protect society from being further victimized by his criminal conduct. Defendant's long history of criminal activity and encounters with the law are the result of his confirmed, unchangeable criminal attitude towards society and its rules.

By pleading guilty to a felony of the third degree, defendant knew he could be sentenced to prison for a maximum of seven years and fined up to $15,000.00. 18 Pa.C.S. Sections 3903(a), 1103(3), 1101(2). The sentence of three and one-half to seven years is within the statutorily prescribed limits.

In light of the considerations mandated for sentencing, defendant's sentence is not excessive, and any sentence less than that imposed would have tended to depreciate the seriousness of the offenses committed.

The sentence was proper and the appeal should be dismissed."

The Court's opinion and a thorough examination of the record thus manifest a consideration of the statutory guidelines for sentencing, and because the sentence imposed was within the statutorily prescribed limits, this Court will not disturb the sentence as unduly harsh or manifestly excessive.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent. Appellant was placed in jeopardy twice when the court revoked the initial sentence imposed on the probation violation and subsequently imposed a harsher sentence as a direct result of appellant's criticism (i.e., "You know, you are just making a mockery out of justice",) to the court; therefore, the additional period of incarceration should be vacated.

The majority concludes that the court imposed only one sentence, the sentence of three years was imposed orally and was without legal effect. This writer cannot agree. Taking

the prosecution's argument to its logical extension would create a *per se* rule in which no double jeopardy violation could ever occur where an orally imposed sentence had been increased. This Court rejected such a suggestion in *Commonwealth v. Foster*, 229 Pa.Super. 269, 272 n. 4, 324 A.2d 538, 540 n. 4 (1974). In *Foster*, we said:

"Of course, the facts of this case do not pose a situation where the sentencing court *orally* pronounced a sentence in the presence of the defendant and subsequently, some time after the hearing, entered a more severe sentence on the record. This situation is much closer to the facts of Silverman, and is one with which we are not concerned here." (emphasis added.)

To begin with, an appellate court's review of the legality of a sentence is not limited to the language contained in the docketed order. See *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). That sentence also must be imposed in accordance with certain guidelines. See 42 Pa.C.S.A. §§ 9721 and 9725, Pa.R.Crim.P. 1401 *et seq.*, and *Id.* One of the most basic requirements is that the "trial court . . . state on the *record*, the reasons for the sentence imposed", *Id.*, 474 Pa. at 133 n. 24, 377 A.2d at 149 n. 24, because:

"[w]ithout a statement of reasons *on the record*, it is difficult to perceive how an *appellate court can discern whether the trial court* has exercised its discretion 'within certain procedural limits including the consideration of sufficient and accurate information.'" *Id.*, 474 Pa. at 133 n. 24, 377 A.2d at 149 n. 24 (emphasis added).

Thus, contrary to the majority's statement of the law, an appellate court is not restricted to an examination of the judgment of sentence inserted on the docket entries as we must examine the *record* to determine if that sentence was set within established guidelines.

Our Supreme Court rejected that notion in *Commonwealth v. Riggins*, supra. In *Riggins*, the Court said:

"Eminent and wise judges have warned [ ] against . . . [requiring a statement of reasons]. Our *judgment*, they say, is better than our reasons. And, it is vain to attempt

to explain the exact proportions attributable to our interest in punishment, retribution, reform, deterrence, even vengeance. But are these arguments valid? For there is a grave danger that a sentencing judge will *allow his emotions or other transient factors* to sway him. The strongest safeguard is for him to act only after formulating a statement of the considerations which he allows himself to take into account." (Quoting Wyzanchi, "A Trial Judge's Freedom and Responsibility, 65 Harv.L.Rev. 1281, 1292 (1952) (Emphasis added).

Id., 474 Pa. at 129, n. 17, 377 A.2d at 147, n. 17.

Upon examining the statement of reasons in the record before us, it is clear that the trial court "allowed his emotions to sway him", and, thus, when he imposed an additional sentence of six months imprisonment violated the principles set forth in *Commonwealth v. Silverman*, supra.

In *Silverman*, the trial court orally imposed a sentence which would have been suspended if the federal authorities committed the defendant to a program for the rehabilitation of narcotics users. Id., 442 Pa. at 213, 275 A.2d at 309. The next day, the trial court said he had "second thoughts" about his actions of the previous day because of a report he had received in the meantime which informed him of other criminal charges currently pending against Silverman. A new sentence then was imposed directing the defendant to serve a definite term of imprisonment. Our Supreme Court reversed the trial court and said that "a modification of a sentence imposed on a criminal defendant which increases the punishment is double jeopardy." Id., 442 Pa. at 217, 275 A.2d at 311. Similarly, this writer finds that the trial court's statement, "Well, just a minute. Come back here. I will add a little more time on to it" (N.T. 39), which was made after the court had imposed a sentence of three to seven years is analogous to the "second thoughts" entertained by the trial court in *Silverman*, and hence, the subsequent modification of that sentence which increased appellant's sentence to a minimum of three and *one half* years violated double jeopardy. The fact that the "second

thoughts" occurred instantaneously, instead of on the next day as did occur in *Silverman,* does not alter the applicability of the principle previously stated.

Of course, a court may modify a sentence in a proper case. See Pa.R.Crim.P. 1410. However, where a sentence has been increased, "the factual data upon which the increased data is based must be made [a] part of the record, so that the *constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Commonwealth v. Riggins,* 474 Pa. at 126, 377 A.2d at 146. (Emphasis added). The factual data in the instant case disclose that the increased sentence of six months was not imposed in error; rather, it was levied for what the court obviously considered to be the contumacious behavior appellant demonstrated when the court imposed his sentence. Because "a sentencing judge should not allow his *emotions* or other transient factors to sway him," supra, that portion of the sentence which was imposed as a direct punitive reaction to the verbal affront uttered to the court was constitutionally infirm. The court should not have considered such behavior as a factor in sentencing. Cf. *Commonwealth v. Kostka,* 276 Pa.Super. 494, 507, 419 A.2d 566, 573 (1980) (where the sentence imposed was invalid where the trial court in his comments based the sentence upon his own belief of the value of retribution); See also 42 Pa.C.S.A. § 9725 for the criteria a court must consider in imposing a sentence of total confinement.[1]

1. In its opinion, the trial court also said "[O]nly those sentences which are entered upon the records of the Court, however, are controlling. Cf. *Com[monwealth] v. Thomas,* 219 Pa.Superior Ct. 22, (280 A.2d 651) (1971); *Com[monwealth] v. Zelnick,* 202 Pa.Superior Ct. 129, [195 A.2d 171] (1964)." Trial Court Opinion at 3.

First of all, the principle enunciated in *Thomas* is consistent with the result this writer reaches today. In that case, the sentencing judge attempted to "correct" a sentence from a suspended sentence to a term of incarceration of one to three years imprisonment. With this change, the sentence would have conformed with the one orally imposed. This Court disallowed the attempt by the judge to conform the sentence with his "true intention" and relied on the principle of *Silverman* which voided the "old rule permitting a sentencing judge to *increase* the sentence within either the term of court or thirty days

The majority concludes that the court could consider "the fact that [appellant] had no remorse for his crimes and his utter contempt for the legal process." At 822. While this writer does not take issue with the principle that a defendant's attitude is a proper factor to be considered in determining a sentence, that principle is inapplicable where a sentence already has been imposed. A defendant who engages in contemptible behavior in the presence of the court after a sentence already has been imposed can be held in contempt; however, that is a separate and distinct legal proceeding which the sentencing court here easily could have invoked.[2] See *Commonwealth v. Rubright*, 489 Pa. 356, 414 A.2d 106 (1980).

Additionally, this writer also must reject the prosecution's implication that because a weighty consideration in a court's analysis of the double jeopardy issue should be whether a defendant has begun to serve his sentence, a different result would obtain in the instant case because appellant had not

if the term of court terminated prior to the thirty day period in light of *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). . . ." *Commonwealth v. Thomas*, Id., 219 Pa.Super. at 26, 280 A.2d at 653. (Emphasis added) Thus, the court disallowed the increased sentence even though it said in dictum that "the controlling record is the endorsement of the sentence upon the back of the indictment, signed by the judge." *Commonwealth v. Thomas*, Id., 219 Pa.Super. at 28, 280 A.2d at 654.

Secondly, the validity of the *Zelnick* case would appear to be eroded by *Commonwealth v. Silverman*, supra, and *Commonwealth v. Riggins*, supra. In *Zelnick*, this Court allowed the increase of a sentence because a "court has full power to reconsider the original sentences and to reduce or increase them so long as the term during the original sentence was imposed had not expired," and also because "it is firmly established that the extent of sentence is a matter within the discretion of the trial judge and will not be disturbed if within statutory limits." *Commonwealth v. Zelnick*, 202 Pa.Super. at 131, 195 A.2d at 173. However, since *Commonwealth v. Silverman*, supra, and *Commonwealth v. Riggins*, supra, a court's authority to sentence a defendant, as discussed above, has been circumscribed.

2. Although not ruling on whether the evidence in this case would have supported a contempt conviction, we note that a court has the power to "inflict summary punishments for contempt of court" which is restricted *inter alia* to a case where "the misbehavior of any person in the presence of the court, thereby obstruct[s] the administration of justice". 42 Pa.C.S.A. § 4131.

begun to serve his sentence when the increased sentence was imposed. Such a factor has never been considered to be the only litmus test for determining whether a sentence is infirm. See *Commonwealth v. Brown*, 455 Pa. 274, 277, 314 A.2d 506, 508 (1974) (where our Supreme Court said "*More important* for our resolution of the instant case, however, is our decision .. where we held, *inter alia*, that even an increase in sentence which is merely designed to correct an inadvertent judicial mistake must be scrutinized as carefully as an increase which results from a reconsideration of sentencing factors or from a judicial change of mind.") (footnote omitted) (emphasis added). Similarly, in the instant case, this writer has scrutinized the record and determined that the increased sentence did not comport with the requirements of this Court.

No one would disagree that sentencing is perhaps the most difficult and soul-searching of all judicial functions. That is precisely the reason that such an important function cannot and should not be discharged impulsively, out of pique or impatience. See footnote 2, infra. Because the record indicates that the instant sentence was imposed precisely for that reason, I must register my dissent.