466 A.2d 180

**COMMONWEALTH of Pennsylvania**

**v.**

**Larry D. BEDLEYOUNG, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 25, 1983.

Filed Sept. 30, 1983.

324

Robert Sullivan, Jr., Lebanon, for appellant.

William L. Thurston, Assistant District Attorney, Lebanon, for Commonwealth, appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

WICKERSHAM, Judge:

Defendant Larry Bedleyoung was found guilty on charges of rape, recklessly endangering another person, and criminal conspiracy on May 14, 1981 in a jury trial proceeding conducted before the Honorable G. Thomas Gates, President Judge of Lebanon County. At trial the victim testified that on January 3, 1981 she was living in Lebanon, Pennsylvania with her two sons, the youngest of

whom was four months old. She was visited at about ten o'clock in the evening by her former husband and the defendant Larry Bedleyoung. After a period of time they left but returned at about eleven o'clock p.m. She let them in. She testified:

Q. Now, you said you went to feed the baby, and what happened?
A. They grabbed me and threw me on the bed.
Q. Who grabbed you?
A. Harvey and Larry.
Q. And where did they grab you?
A. My arms.
Q. What happened after they threw you on the bed?
A. They took my clothing off.
Q. Who took your clothing off?
A. Harvey and Larry.
Q. What clothing—what did you have on at the time that they took your clothing off?
A. My underwear and my lounger.
Q. What did you do when they did that?
A. Scream, told them to leave me alone.
Q. Did they leave you alone?
A. No.
Q. What did they do?
A. They just kept on.
Q. What did they do?
A. Well, Harvey had oral sex.
Q. On you?
A. Yeah.
Q. What was Larry doing while Harvey was doing that?
A. Holding me.
Q. Where was Larry holding you?
A. The arm.
Q. What happened after Harvey had oral sex with you?
A. He got on top.
Q. He got on top of you?
A. Ah-huh.

Q. Did he have his clothing on at that time?

A. Yeah.

Q. And what was he doing while he was on top of you? What did he try to do while he was on top of you?

A. Perform sex.

Q. Where was Larry at that time?

A. He was still holding me, on the bed next to me.

Q. What happened after that?

A. Well then, then Larry got on top, and Harvey got off and he got undressed.

Q. Who got undressed?

A. Harvey. And then he made me perform oral sex on him while Larry was on top of me.

Q. Harvey made you perform oral sex?

A. Yeah.

Q. On him?

A. Ah-huh.

Q. And what was Larry doing at that same time?

A. He was on top of me.

Q. Was he having sexual contact with you?

A. Yes.

Q. What type of sexual contact with you? Normal sexual relations, intercourse?

A. Yeah.

Q. What happened then?

A. Then Larry said that that looked like fun, and they switched. When he went to switch, he took his clothes off.

Q. Who took his clothes off?

A. Larry.

Q. What happened then, Wanda?

A. Well, I was screaming and carrying on. So, he was trying to hold my mouth shut, you know. So, he couldn't and so Harvey told him to get a gun—I mean, to get his knife.

Q. Harvey told Larry to get his knife?

A. Yeah.

Q. What happened then?

A. Larry got up and took his knife out of his pants'
pocket, which was laying on the floor, and he brought it
and held it against my neck and told me to shut up or
they were gonna stab me.

Q. And who was it that held the knife against you?

A. Larry.

Q. What happened then, Wanda?

A. Well, then Harvey got off and Larry got on, and
Larry laid the knife on the dresser next to my bed.

Record at 13–16.

On October 20, 1981, President Judge Gates sentenced
defendant Bedleyoung to a term of imprisonment of not less
than five nor more than fifteen years on the rape conviction
and concurrent sentences on the other convictions. This
direct appeal followed in which appellant Bedleyoung raises
two issues for our consideration:

## STATEMENT OF QUESTIONS INVOLVED

A. Did the lower court err in ruling that certain
remarks by the victim were not so prejudicial as to
deprive defendant of a fair and impartial trial and require
granting a new trial?

B. Was the sentence imposed by the lower court mani-
festly excessive and unduly harsh in view of appellant's
age and prior conduct?

Brief for Appellant at 4.

 As to the first issue raised on appeal relating to the
defendant's cross-examination of the victim, we are in com-
plete accord with the thinking and analysis of President
Judge Gates when, in his opinion dated September 28, 1981
for the court en banc, he said:

The defendant's cross-examination of the victim was
primarily an attack on her credibility. It was brought out
that the victim ... was married to Harvey Anspach when
she was only sixteen. It was brought out that she had
her first child by Harvey before their marriage and when
she was only fourteen years old. Pursuing this theme

further, the defendant tried to develop the fact that their marriage was stormy and there were frequent separations prior to the divorce. The testimony on cross-examination complained of occurred in the following sequence:

Q. Now, you indicate—now, when did you separate from Harvey for the last time?

A. It was either the end of January or beginning of February. I can't tell you the exact date.

Q. Of 1980?

A. Yes.

Q. Now, you indicated that your relationship with Harvey had been hot and cold. You lived together, separated, lived together, over the course of your marriage; is that correct?

A. Yes.

Q. How many times did you separate from Harvey, approximately?

A. I don't know.

Q. Half a dozen times?

A. With him being in and out of jail, we were separated for a few times. I don't know exactly. (N.T. 22)

Thereafter the defendant at sidebar moved for the withdrawal of the juror which was refused. He now claims that the victim's answer was so prejudicial as to warrant a new trial. We disagree.

In the defendant's brief a portion of the law as set forth in *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973) is quoted. The entire observation of the Court is as follows:

'Every unwise or irrelevant remark made in the course of the trial by judge, a witness, or counsel, does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'

A more pertinent legal principal applies. When defense counsel's question invites an explanation, he cannot com-

plain of it. See *Commonwealth v. Brown,* 229 Pa.Super. 211, [324 A.2d 392] (1974) and *Commonwealth v. Dalton,* 199 Pa.Super. 388, [185 A.2d 653] (1962). Here defense counsel was trying to pin down the number of times the victim and the co-conspirator Harvey Anspach had been separated during the course of their marriage. Counsel asked the question once and the witness answered she didn't know. In pressing on, she explained she didn't know exactly how many times because Harvey was in and out of jail.

In addition to the fact that counsel's question induced the answer, we note that the reference to jail refers to Harvey Anspach, not the defendant. Therefore, it does not appear to us that the remark is so prejudicial as to deprive this defendant of a fair trial. A passing reference to the co-conspirator's prior criminal involvement who is not then on trial cannot be considered prejudicial since the co-conspirator's prior activity cannot be ascribed to the defendant.

Lower ct. op. at 2–4.

*Cf. Commonwealth v. Ewell,* 318 Pa.Super. 397, 465 A.2d 13, Opinion by Wieand J., filed August 19, 1983, where "during a jury trial on a charge of driving while under the influence of alcohol, the prosecuting attorney deliberately elicits from a Commonwealth witness an extrajudicial statement attributed to the defendant 'that he had an incident before for drunken driving.'" We held:

It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that the purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused

guilty, and thus effectually to strip him of the presumption of innocence.

*Id.*, 318 Pa.Superior Ct. at 400, 465 A.2d at 15.

Finally, appellant Bedleyoung complains that his sentence was manifestly excessive and unduly harsh.

■ Where the statute under which a defendant is convicted carries no specified penalty, sentencing is a matter within the sound discretion of the trial judge, whose determination will not be disturbed absent an abuse of that discretion. Such an abuse of discretion will be found where the sentence exceeds statutory limits or is manifestly excessive. *Commonwealth v. Lee*, 254 Pa.Super. 291, 385 A.2d 1025 (1978). As defendant's sentence does not exceed the statutory maximum, we need review the sentence only to determine whether it is manifestly excessive.

■ Guidelines have been established by the legislature for consideration by trial judges in the imposition of sentences. These guidelines require that the judge "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).[1] The judge is to apply this principle in choosing among the sentencing alternatives available: probation, determination of guilt without penalty, partial confinement, total confinement, and fines. 42 Pa.C.S. § 9721(a). Further, he must make as part of the record a statement of the reason or reasons for the sentence imposed. 42 Pa.C.S. § 9721(b). This statement of reasons must make it clear that the judge gave weight to the sentencing guideline statutes in making his determination. *Commonwealth v. Kostka*, 475 Pa. 85, 90, 379 A.2d 884, 887 (1977).

■ Here, a statement of reasons was made, and it shows that the judge made the determinations required by

1. Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, effective in 90 days, *as amended*, Nov. 26, 1978, P.L. 1316, No. 319 § 1, effective Jan. 1, 1979; Act of Oct. 5, 1980, P.L. 693, No. 142, § 401(a), effective in 60 days.

the statute for imposition of a sentence of total confinement. *See* 42 Pa.C.S. § 9725.[2] While it is true that "the sentencing judge must do more than merely echo" the requirements of the applicable statute to justify his sentence, *see Commonwealth v. Farrar*, 271 Pa.Super. 434, 452, 413 A.2d 1094, 1103 (1979), where it is clear from the record that the judge was justified in reaching those conclusions, we need not remand for resentencing. *Id.*, 271 Pa.Superior Ct. at 453, 413 A.2d at 1104. The record in this case reveals that the defendant's conduct was of a type which militates against the imposition of probation under the applicable guidelines. *See* 42 Pa.C.S. § 9722[3] (listing factors in favor of probation, *e.g.*, "(1) The criminal conduct of the defendant neither caused nor threatened serious harm ... (3) The defendant acted under a strong provocation ... (5) The victim of the criminal conduct of the defendant induced or facilitated its commission."). Since defendant's conduct caused serious harm and his attack upon the victim was without any reasonable provocation whatsoever, the trial judge was clearly justified in declining to put defendant on probation and in finding that defendant's conduct was sufficiently serious to warrant a sentence of total confinement. The court considered all the factors required by statute and we find its determination to be adequately supported by the record. We therefore conclude that the

2. Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, effective in 90 days, *as amended* by Act of Oct. 5, 1980, P.L. 693, No. 142, § 401(a), effective in 60 days:

 The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
 (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime.
 (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
 (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

3. Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, effective in 90 days, *as amended* by Act of Oct. 5, 1980, P.L. 693, No. 142 § 401(a), effective in 60 days.

sentence is not excessive under the circumstances and that the court did not abuse its discretion in imposing it:

THE COURT: Mr. Bedleyoung, I have before me a list of your prior violations, consisting of Assault, Parole Violation, Loitering and Prowling, Reckless Driving, Criminal Mischief, Eluding Police, Driving During Suspension, Operating Under the Influence, Failing to Pay Fines and Costs, Possession of Offensive Weapons, Criminal Conspiracy, all over a period extending from 1974, and you are only 27 years of age. Have I missed any here that is not correct?

THE DEFENDANT: No, sir.

THE COURT: Considering that this was a rape of a particularly despicable kind; considering your record; considering the fact that probation has not worked; considering the fact that you have an alcohol problem and you are aware of it and do nothing about it, something like this is apt to reoccur, and it is therefore my intention of sentencing you to imprisonment.

Do you have anything to say to me before sentence is imposed?

THE DEFENDANT: No, sir.

Sentencing Record at 3–4.

Judgment of sentence affirmed.