500 A.2d 158

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Kirk FRAZIER.**

Superior Court of Pennsylvania.

Argued May 23, 1985.
Filed Oct. 25, 1985.

Maxine J. Stotland, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Jeffrey P. Shender, Assistant Public Defender, Philadelphia, for appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

The Commonwealth of Pennsylvania appeals the sentence imposed by the trial court following non-jury trial in the Court of Common Pleas of Philadelphia County. We affirm.

The Honorable Victor J. Dinubile, Jr. found appellee guilty of attempted involuntary deviate sexual intercourse, unlawful restraint, corrupting the morals of a minor, indecent assault, and indecent exposure. Appellee was the stepfather of the victim. On the evening of the incident appellee accompanied the victim to the home of her grandmother. Upon arriving, appellee took the victim directly to the basement where he began to choke her and threatened to rape her. Appellee then forced the victim to commit an act of sodomy upon him. While still choking the victim, he then attempted to commit a similar act upon her. Immediately after the incident, appellee gave the victim a quarter to purchase a newspaper. The victim used the quarter to phone police, who arrested appellee shortly thereafter.

Following appellee's conviction, the trial judge postponed sentencing and ordered a presentence investigation and psychiatric evaluation. Subsequently, appellee was sentenced to a term of imprisonment of not less than 4 months nor more than 10 years for the attempted involuntary deviate sexual intercourse, and concurrent terms of 4 months to 2 years for unlawful restraint and corrupting the morals of a minor. Sentence was suspended on the remaining two counts. Following sentencing, the Commonwealth filed a timely motion for reconsideration of sentence. The motion was denied. Pursuant to 42 Pa.C.S. § 9781(b), the Commonwealth filed this appeal asserting two issues for this Court to consider. Appellant first argues that the trial judge failed to consider the "totality of the circumstances" when sentencing appellee. We find no merit in this argument.

The Sentencing Code requires: "In determining the sentence to be imposed, the court shall, except where a

mandatory minimum applies, consider and select one or more of the following alternatives: (1) An order of probation; (2) a determination of guilt without further penalty; (3) partial confinement; (4) total confinement; (5) a fine." 42 Pa.C.S. 9721(a). When choosing from among these alternatives, the sentencing court must consider the particular circumstances of the offense and the character of the defendant in reaching its determination. *Commonwealth v. Parrish*, 340 Pa.Super. 528, 490 A.2d 905 (1985); *Commonwealth v. Marlin*, 328 Pa.Super. 498, 477 A.2d 555 (1984). In addition, the sentence must be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. 9721(b); *Commonwealth v. Parrish, supra; Commonwealth v. Martin, supra.* These are the standards that *must* be followed by the sentencing judge when selecting a sentencing alternative. *Commonwealth v. Knight*, 479 Pa. 209, 387 A.2d 1287 (1978); *see also Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984); *Commonwealth v. Martin, supra.*

The record reveals that the trial judge delayed sentencing after appellee's conviction, and ordered a presentence investigation and psychiatric evaluation to better determine a proper sentence. The trial judge reviewed both reports and at the sentencing hearing had the opportunity to consider arguments by counsel, observe appellee, and listen to the testimony of the victim's mother (appellee's wife). The trial judge also heard from appellee's sex-therapy counselor, who testified that appellee had made progress since his arrest:

Q. Do you feel there is hope?

A. The prognosis is very good, but I can appreciate that someone evaluating Mr. Frazier on a one-time basis, looking at his past history, would see a lot of trouble, but in the course of knowing Mr. Frazier now for six months or so, I see him working hard from his end to make this work, and also see his wife working very hard to make their marriage relationship work.

Q. Would you explain to the Judge the nature of your meetings with Mr. Frazier and what kind of help you offer Mr. Frazier, and what help he has sought from you?

A. O.K. Your Honor, I first met with Mr. Frazier on March 15, and we have been meeting once a week, and during that time I would say—well, the therapy was begun not at his own initiation but by an outside source, and during the course of our meetings Mr. Frazier initially posed some resistance to treatment.

He wanted to make sure that the therapy was not part of the legal machinery and that we would have a confident therapy that would prove to be effective during the course of the treatment, and during the treatment I have seen Mr. Frazier bring more and more emotional material into our sessions, and there has been an increased trust between us.

I received his permission to meet with his wife separately, and eventually I would recommend that I meet with the two of them together. In working with both him and his wife, I have found that they are two people who are working very hard to overcome the problem that has occurred in their marriage relationship, and to successfully proceed with their married life and in raising their children.

At the close of the sentencing hearing, the trial judge imposed sentence, stating seven reasons for his determination: 1) appellee agreed to a stipulated trial in which the juvenile victim was saved the trauma of having to testify; 2) the psychiatric evaluation recommended out-patient sex counseling; 3) the presentence report recommended sex-therapy rather than incarceration; 4) the mother of the victim pleaded to the court to keep her family intact and not to impose incarceration; 5) appellee was contrite; 6) appellee was already participating in a sex-therapy program; and 7) appellee's employment background was good.

■ A sentencing court is given broad discretion to inquire into the personal character of the defendant. *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977);

*see also Commonwealth v. Vernille,* 275 Pa.Super. 263, 418 A.2d 713 (1980). Among those factors used to determine a defendant's potential for rehabilitation is his or her manifestation of social conscience and responsibility through contrition, repentance, and cooperation with law enforcement agencies. *Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622, (1980); *Commonwealth v. Gallagher,* 296 Pa.Super. 382, 442 A.2d 820 (1982).

 We find that the trial judge was well within the parameters of the Sentencing Code. The fact that the court made no specific reference to the factors set forth in the Code is not fatal, as long as it is clear that the court considered the sentencing factors. *Commonwealth v. Royer, supra; see also Commonwealth v. Wareham,* 259 Pa. Super. 527, 393 A.2d 951 (1978). The trial court did not overlook any pertinent facts in reviewing the circumstances of the crime and appellee's background. In short, we are satisfied that the trial judge considered the "totality of the circumstances," and in an exercise of sound discretion imposed a sentence that struck a fair balance between punishment and rehabilitation.

Appellant contends that the sentencing judge unreasonably deviated from the Sentencing Guidelines promulgated by the Pennsylvania Commission on Sentencing by sentencing appellee to a term of imprisonment below the recommended Guideline sentence. The Sentencing Guidelines recommend the following sentences for the type of offense appellee was convicted of:[1]

| MINIMUM RANGE | AGGRAVATED MINIMUM RANGE | MITIGATED MINIMUM RANGE |
|---|---|---|
| 30–54 months | 54–68 months | 22–30 months |

1. Included in the determination of sentencing under the Guidelines is the prior record score of a defendant. In the instant case, the prosecution asserted that appellee had a prior record score of three pursuant to a previous assault (noted on pp. 73–75 of Dissent by Hester, J.). The trial judge found that appellee's prior record score was a one. His finding was based on the determination that the prior assault by appellee was not within the aggravated range.

In this State, the selection of sentence has always been within the sound discretion of the sentencing judge. The sentencing judge must also follow the standards set by the Sentencing Code discussed supra. *Commonwealth v. Parrish, supra; Commonwealth v. Royer, supra; Commonwealth v. Martin, supra; see also Commonwealth v. McCall*, 320 Pa.Super. 473, 467 A.2d 631 (1983).

Many of our cases have used the term "Guidelines" when referring to those standards under the Sentencing Code. *See Commonwealth v. Bedleyoung*, 319 Pa.Super. 323, 466 A.2d 180 (1983); *see also Commonwealth v. Moore*, 307 Pa.Super. 560, 453 A.2d 1029 (1982). "Perhaps confusion may be avoided in the future if we refer to 'guidelines' only when we are considering the Guidelines developed by the Commission on Sentencing." *Commonwealth v. Royer, supra*, 328 Pa.Super. at 66, 476 A.2d at 455.

Although the Sentencing Guidelines are found within the Sentencing Code at 42 Pa.C.S. 9721(b), it was not the intention of the Legislature to adopt the Guidelines as a way to preclude judicial discretion, as the trial court pointed out, quoting from the fact sheet distributed by former Representative to the General Assembly Anthony Scirica:

Mandatory sentences do not work. It is impossible to legislatively propose a single just sentence for all persons convicted of a particular crime and variations in sentencing necessarily result from taking into account individual differences in each case. Furthermore, mandated sentences fail to consider the problem of jury nullification, or the practical considerations of plea bargaining: backlog, problems of proof, prior relationship between victim and defendant, and reluctance of victims to prosecute. No legal system can function without the exercise of discretion. To eliminate discretion from the courts where it is visible, is to reconstitute it in the police and prosecutors where it is invisible.

There was virtually no opposition to the Guidelines finally adopted by the legislature, which increased sentence severity and broadened the range of judicial discretion. Martin,

*Interests and Politics in Sentencing Reform: The Development of Sentencing Guidelines in Minnesota and Pennsylvania,* 29 Vill.L.Rev. 21 (1983–84). The language of the Sentencing Code itself clearly shows the intent of the Legislature: although the Code does require a trial judge to *consider* the Sentencing Guidelines, it also states that, "In every case where the court imposes a sentence outside the Guidelines ... the court shall provide a contemporaneous written statement of the reason or reasons for deviation from the Guidelines." 42 Pa.C.S. 9721(b); *Commonwealth v. Royer, supra.* Clearly, had the Legislature intended the Guidelines to remove the discretion of the trial judge from sentencing, it would not have included language in the Code that acknowledges inevitable instances of departure from them.

■ Since a trial judge is not bound hard and fast by the Guidelines, we must now determine if the departure in the case at bar was reasonable. 42 Pa.C.S. 9781(c)(3) requires this Court to vacate judgment of sentence should we find that the sentencing court sentenced outside the Guidelines and the sentence imposed was unreasonable. In making this determination, we consider the following two factors: 1) Did the court provide a contemporaneous statment at sentencing; and 2) was the statement adequate? *See Commonwealth v. Royer, supra.*

"The judge's statement of reasons for the sentence made of record at sentencing in the defendant's presence constitutes a contemporaneous written statement." *Commonwealth v. Royer, supra,* 328 Pa.Superior Ct. at 69, 476 A.2d at 457. The trial judge in the instant case gave seven reasons for his selection of sentence. The record indicates that the statement was made at sentencing, in the presence of the defendant. Accordingly we find that the trial judge's articulated reasons were contemporaneous within the meaning of the Sentencing Code. *Cf. Commonwealth v. Hutchinson,* 343 Pa.Super. 696, 495 A.2d 956 (1985).

Not only must the trial judge provide a contemporaneous statement, but that statement must contain "the permissible range of sentences under the Guidelines and, at least in

summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range." *Commonwealth v. Royer, supra,* 328 Pa.Super. at 71, 476 A.2d at 458. It is clear from the record that the decision to sentence outside the Guidelines was painstakingly reached, as the following statement by the trial judge:

THE COURT: Mr. Frazier, the Court has given you a sentence it does not enjoy giving, but I had to do it. You must understand that I rarely depart from the guidelines. If I were applying the sentencing guidelines without givining [sic] written reasons for departing from them, I could have sentenced you up to over 6 years, or I could have sentenced you to 27 months minimum.

I have departed from the guidelines in the imposition of my sentence because of your good background, but there has to be a punitive aspect involved here to teach you that you cannot do this. You are going to have to go into custody today and be under the supervivison [sic] of the State Board of Parole.

From what I know of this case, I don't believe you will ever return to court again. I certainly hope so. Good luck to you.

Although the Sentencing Guidelines are complex, we are satisfied that the trial judge provided the defendant, and this Court, with an appropriate explanation of his consideration of the Sentencing Guidelines and why he departed from them.

The purpose of the contemporaneous written statement would appear to be to advise the defendant of the reasons for deviating from the guideline and provide a memorial for his use and appellate review. It would be unreasonable to conclude that the legislature intended that the court do more than that when sentencing outside the Guidelines.

*Commonwealth v. Royer, supra,* 328 Pa.Superior Ct. at 69, 476 A.2d at 457.

Accordingly, judgment of sentence is affirmed.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

Our task as a court in reviewing the sentencing record is to consider 1) the nature of the offense and the defendant's criminal history and characteristics; 2) the sentencing court's observations of the defendant and the presentence report; 3) the sentencing court's findings; and 4) the sentencing guidelines. 42 Pa.C.S.A. § 9721. An application of these factors to this appeal convinces me that the trial judge erred in imposing a sentence outside the guidelines.

The court seemingly downgraded the significance of the crime. Appellee's act was premeditated as he walked with his stepdaughter to her grandmother's house and then led her to the basement; she was ignorant of his plans and did not freely accommodate him upon discovering his intentions. Appellee choked her and threatened to kill her if she did not engage in oral sex. Moreover, he threatened to beat her if she screamed.

Appellee's criminal record and characteristics are equally alarming. A propensity for abusing children is demonstrated by this crime and by appellee's earlier conviction for corrupting the morals of a minor.

In 1980, appellee was convicted of assaulting the mother of one of his children, a crime which the sentencing court refused to recognize as aggravated assault because, in its judgment, there was insufficient evidence of appellee's actions and the victim's injuries. I believe the court erred, as appellee admitted breaking her jaw and carrying a hammer in a paper bag at the time he struck her. Furthermore, appellee pled guilty, and aggravated assault was the only charge contained in the information. Appellee's probable release following four months of imprisonment on the present charge is particularly disturbing as he will then reside with his wife, two stepdaughters (one of whom was the victim here) and his one-year-old daughter, the class of people he has abused.

Many of the sentencing court's observations of appellee were incorrect. I do not agree that appellee's work record

was "excellent." Appellee was fortunate to enjoy success in moving from job to job, thereby maintaining steady employment. Since 1969, appellee's longest period with one employer was from 1969 to 1971 when he worked as a maintenance man and welder. Thereafter, he worked as a sheet metal worker, construction worker and as a laborer in various foundries. Lately, appellee has been self-employed as a handyman and home renovator. Appellee's frequent turnover and short-lived jobs do not constitute an "excellent" employment history without evidence of his workmanship and diligence. Frequent short-lived jobs raise questions regarding commitment.

The court also had no basis for disbelieving the report of licensed psychologist, Sol B. Barenbaum, Ph.D. Dr. Barenbaum recommended correctional institutional training. With such training he opined that appellee's "prognosis for adjustment in the community is seen at best guarded...." The court's opinion that appellee's prognosis was better than guarded was without basis.

Similarly, there was no basis for believing that appellee was contrite. No testimony or documentary evidence reflected appellee's remorse; consequently, the court's opinion must have been based upon observations of appellee's courtroom demeanor. Since most defendants display remorse at sentencing, I do not consider appellee's appearance of contrition to be a factor justifying a reduced sentence, particularly in light of his history of abusing children and paramours.

The court cites appellee's guilty plea and need for sex therapy as additional reasons for departing from the guidelines. A guilty plea is not remarkable and does not necessarily represent a defendant's genuine sense of guilt. In fact, it is generally, though not admittedly, submitted in return for the prosecution's recommendation for leniency. Secondly, sex therapy can be conducted during incarceration as easily and effectively as during probation.

Having failed to substantiate its departure from the guideline ranges, the court erred in sentencing appellee to a

combined term of imprisonment of not less than four months nor more than two years. *See Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985).