J-S69042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN CHRISTOPHER MCCLASKEY, | |
| Appellant | No. 887 EDA 2015 |

Appeal from the Judgment of Sentence of January 12, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-0002018-2013

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 30, 2015**

Appellant, Brian Christopher McClaskey, appeals from the judgment of sentence of ten to 20 years of incarceration imposed on January 12, 2015, after the trial court convicted Appellant of burglary, criminal attempted indecent assault, criminal trespass, and false imprisonment.[1]  Upon review, we affirm.

The trial court recited the factual and procedural background of this case as follows:

> [The victim] was at home alone on February 16, 2013, sick in bed in her residence[.]  To her great horror, at around 9:00 p.m., a man wearing a mask and gloves came through the door to her second-floor bedroom.  He jumped on top of her in bed and told her he wanted to kiss her all over.  [The victim]

_____

[1] 18 Pa.C.S.A. §§ 3502, 901, 3503 and 2903, respectively.

struggled with her then-unknown assailant, who reeked of alcohol, and eventually removed his mask. She recognized the man as [Appellant], her neighbor.

[Appellant] had gained access to [the victim's] house, without her permission, through a door leading to a common basement shared by their respective residences. [The victim] was afraid [Appellant] was going to rape her and succeeded in talking him out of it. During their discussion, [Appellant] indicated that he had been interested in her for some time. [The victim], in contrast, only knew [Appellant] as her neighbor and had never spoken to him prior to this incident.

[The victim] eventually convinced [Appellant] to leave. [Appellant] told her to stay in bed and he would leave on his own, but [the victim] walked downstairs with him because she wanted to make sure he left. She asked how [Appellant] had gotten into her house and he said through the kitchen door. [The victim] noticed, however, that her kitchen door was still locked; she realized he had come in through the common basement. [Appellant] left through the kitchen door.

Moments later [the victim] heard [Appellant] knocking on the same door. He begged to be let back in because he had locked himself out of his house and wanted to get back through the basement. She allowed [Appellant] back in and locked the basement door after he left. She called her sister and then the police.

Police arrived and eventually encountered [Appellant]. In response to being asked if he knew why they were there, [Appellant] stated[,] "Yes. I know I did wrong." He also volunteered to police that he had heard them talking about a mask and gloves. He told police those items were in the basement.

[Appellant] initially entered an open guilty plea to burglary and criminal attempt indecent assault, but withdrew the plea prior to sentencing. The case proceeded to a stipulated bench trial. The [trial court] found [Appellant] guilty of burglary, criminal attempt at indecent assault, criminal trespass and false imprisonment. He later was sentenced to ten to twenty years in prison for the burglary offense. He also was sentenced to consecutive terms of probation of five years for criminal attempt, seven years for criminal trespass and two years for false imprisonment.

- 2 -

[Appellant] filed a post-sentence motion in which he claimed the sentence was illegal because burglary and criminal trespass should have merged for purposes of sentencing and because he should not have been sentenced for criminal attempt and false imprisonment as they were the offenses he intended to commit when he unlawfully entered [the victim's] residence. He also claimed [the trial] court abused its discretion by imposing an excessive sentence.

After response from the Commonwealth, [the trial] court vacated the sentences imposed on the criminal attempt and false imprisonment convictions and left the remainder of the sentence intact. [Appellant] subsequently appealed and, at the direction of th[e trial] court, filed a Pa.R.A.P. 1925(b) statement of errors.

Trial Court Opinion, 5/15/15, at 1-3 (footnotes omitted).

On appeal, Appellant presents two issues for our review:

WHETHER THE TEN TO TWENTY YEARS SENTENCE OF TOTAL CONFINEMENT IMPOSED BY THE TRIAL COURT ON JANUARY 12, 2015, AND THE FOURTEEN YEARS OF PROBATION CONSECUTIVE TO HIS PAROLE WITH RESPECT TO APPELLANT'S CONVICTIONS FOR BURGLARY, ATTEMPTED INDECENT ASSAULT, CRIMINAL TRESPASS, AND FALSE IMPRISONMENT FOR REASONS ALREADY INCORPORATED IN THE GUIDELINES AND OTHER INAPPROPRIATE REASONS, WAS UNDULY HARSH, TOO SEVERE A PUNISHMENT FOR HIS PARTICULAR OFFENCE [sic], AND IN EXCESS OF WHAT IS NECESSARY FOR THE PROTECTION OF THE PUBLIC AND A VIOLATION OF THE NORMS OF THE SENTENCING PROCESS AND THEREFORE AN ABUSE OF DISCRETION[?]

WHETHER THE TRIAL COURT ERRED IN FAILING TO MERGE THE SENTENCES IMPOSED FOR THE CRIMES OF BURGLARY AND CRIMINAL TRESPASS[?]

Appellant's Brief at 9.

In his first issue, Appellant challenges the discretionary aspects of his

sentence. *Commonwealth v. Rhoades*, 8 A.3d 912, 915 (Pa. Super.

2010) (claim that sentence is excessive is a challenge to the discretionary

aspects of a sentence). It is well-settled that "sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

Recently, this Court reiterated:

The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. *See* [*Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007)] (citation omitted). An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations omitted).

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-1266 (Pa. Super. 2013) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014).

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

- 4 -

which underlie the sentencing process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa. Super. 2012) (citations and internal quotation marks omitted).

***Buterbaugh***, 91 A.3d at 1266.

Instantly, Appellant filed a timely notice of appeal, preserved his sentencing challenge in his post-sentence motion, and included a separate Rule 2119(f) concise statement in his appellate brief. ***See*** Appellant's Brief at 17-20. To the extent Appellant argues that the trial court failed to consider a multitude of mitigating factors, ***see*** Appellant's Brief at 17-20, his assertion that the trial court failed to consider mitigating facts does not raise a substantial question. ***Buterbaugh***, 91 A.3d at 1266. However, with regard to Appellant's contention that the trial court abused its discretion by sentencing him to a "maximum sentence that was ten times what the Guidelines called for," such claim presents a substantial question. ***See*** Appellant's Brief at 20; ***Commonwealth v. Eby***, 784 A.2d 204, 206 (Pa. Super. 2001) (claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a substantial question). Thus, we consider Appellant's sentencing claim. In doing so, we are mindful of prevailing case law, which this Court recently summarized:

> "In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." ***Commonwealth v. Mouzon***, 812 A.2d 617, 620–21 (Pa. 2002); ***see*** 42 Pa.C.S. § 9721(b). The sentencing guidelines are not mandatory, and sentencing courts retain "broad discretion in sentencing matters, and therefore, may sentence defendants outside the [g]uidelines." ***Id.*** (*citing* ***Commonwealth v. Ellis***,

700 A.2d 948, 958 (Pa. Super. 1997)). "In every case where the court imposes a sentence ... outside the guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b). However, "[t]his requirement is satisfied 'when the judge states his reasons for the sentence on the record and in the defendant's presence.'" *Commonwealth v. Widmer*, 667 A.2d 215, 223 (1995), *reversed on other grounds*, 689 A.2d 211 (1997). Consequently, all that a trial court must do to comply with the above procedural requirements is to state adequate reasons for the imposition of sentence on the record in open court. *See* [*Commonwealth v.*] *Robinson*, 931 A.2d [15, 26 (Pa. Super. 2007)] (*quoting* *Commonwealth v. Walls*, 846 A.2d 152, 158 (Pa. Super. 2004), *reversed on other grounds,* 926 A.2d 957 (Pa. 2007)) ("If a court chooses to sentence a defendant outside of the sentencing guidelines, it should state on the record adequate reasons for the deviation.").

"When imposing sentence, a court is required to consider 'the particular circumstances of the offense and the character of the defendant.'" *Commonwealth v. McClendon*, 589 A.2d 706, 712–13 (Pa. Super. 1991) (*en banc*) (*quoting* *Commonwealth v. Frazier*, 500 A.2d 158, 159 (Pa. Super. 1985)). "In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Id.* "Where pre-sentence reports exist, we shall ... presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (2014).

In examining the merits of Appellant's claim, we recognize that the primary consideration in our review of the discretionary aspects of a sentence imposed by a trial court is whether the court imposed an

individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines. ***Commonwealth v. Coulverson***, 34 A.3d 135 (Pa. Super. 2011). Also, "[a] trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010).

Here, we find no basis to disturb the trial court's determination that Appellant's "sentence was appropriate under the circumstances." Trial Court Opinion, 5/15/15 at 4. Our review of the record reveals that the sentence imposed by the trial court was not unreasonable, and reflected the trial court's consideration of the facts of the crime and the character of Appellant.

At sentencing, the trial court heard from Mr. Bill Bishop, who testified to working as a mentor to Appellant at the Montgomery County Correctional Facility. Mr. Bishop testified that Appellant availed himself of numerous prison programs, and was "doing everything … to put himself in a position to succeed." N.T., 1/12/15, at 9. Mr. Bishop stated that he "saw goodness" in Appellant, and was "hoping he is judged gently." ***Id.*** The trial court also considered letters submitted from Appellant's wife, father-in-law, and mother. ***Id.*** at 11-12. Finally, the trial court heard from Appellant, who testified to having a loving family, but suffering from depression and

substance abuse. *Id.* at 38. Appellant admitted to his actions regarding the victim as "harmful and shameful," expressed his regret, and apologized to both the victim and his family. *Id.* Appellant also recounted rehabilitative measures he has pursued in prison, such as mental health counseling and Alcoholics Anonymous. *Id.* at 40.

Conversely, the Commonwealth presented testimony from the victim, who read a detailed statement on the record, noting in doing so that it was "exhausting" and "very upsetting." *Id.* at 17. The victim stated that during the assault, "there was electricity in my body and my heart was doing things I never thought it could." *Id.* at 18. The victim's entire statement, *id.* at 15-29, was admitted into evidence as Commonwealth Exhibit C-1. It included her averment that "there are no words to say to you to get you to understand what I had to deal with both during and after the events … I have been alone with the horror, the fears, the tears." *Id.* at 26, 28. The victim asked the trial court, "Please, Your Honor, please don't take it easy on this man. Please don't let him go away or get away with this." *Id.* at 27.

At the conclusion of the hearing, the trial court commented at length as follows:

> In this present case, I have considered [Appellant's] age, the information about [him] which [he has] given me and which is in the Pre-Sentence Investigation and that which [he] just testified to, as well as the evidence of the circumstances of the offense.
>
> The facts as to [Appellant's] personal background and circumstances are not in dispute. The facts of the offense have been admitted.

I have relied upon the Pre-Sentence Investigation and I have considered the risk assessment in addition to the letters I received prior to this hearing today and the correspondence I received from [Appellant's] mother on different occasions. …

Okay. And I'm making the PSI and the risk assessment part of the record along with the sentencing guidelines that are part of the PSI.

[Appellant has] a long history of mental health issues. [He has] had multiple inpatient stays for violent sexual thoughts toward women, suicidal ideations, and homicidal thoughts as well.

[Appellant has] been placed into institutions, mental health institutions, to try to help [him] in the past, according to the PSI.

Also noted is that [Appellant was] sexually abused as a boy, most deviantly by [his] brother.

It is also noted that you have a long history of drug and alcohol abuse as well and have sought treatment at different occasions. …

You also have a pornography addiction. That was also mentioned.

I am at an absolute loss that the – and I must mention that the risk assessment states that you have a low risk for recidivism – after just mentioning the horrific background that you have, not criminal on your part, but the mental illness that you suffer from and the substance abuse, sexual abuse, and the ideations that you have, that they would with a straight face make that in their report. I totally disagree with that based upon my experience in criminal court and in the practice of law for 35 years.

Let's face it, you are every woman's nightmare. Look what you've done to this woman. Do you see her back there? …

The worst thing that you have done to her in my mind that is so obvious to anyone who sat here is that she doubts herself.

She spent 25 minutes apologizing for what you did to her. You made her question her own sanity. She has been apologizing since she opened her mouth about this really happened, I swear to God it happened, I was there.

Unfortunately, she was there. And unfortunately, what you have taken away from her is her confidence, her security in the simplest things in life: Walking to her apartment, a noise she hears, foreboding, someone behind her, making sure the lights are on, the light's off, was this in this place or that place. This is her life now because of what you did.

I have to balance what is best for you and what is best for society when I fashion a sentence. …

*Id.* at 42-46.

The trial court then rendered its sentence, adding:

This sentence considered the fact that I consider [Appellant] an undue risk. That during a period of probation or partial confinement, [Appellant] will commit another crime. That [Appellant is] in need of correctional treatment that can be provided most effectively by [his] commitment to an institution, and a lesser sentence would depreciate the seriousness of [Appellant's crimes]. That is why I decided to sentence [Appellant] to total confinement.

I would also point out that I think [Appellant] is an absolute risk at this juncture to repeat this type of behavior.

Also, the damage that has been done to this victim is irreparable.

*Id.* at 52.

The trial court's rationale indicates that it applied an individualized and reasonable sentence consistent with the sentencing jurisprudence of Pennsylvania. *Antidormi, supra*. We therefore find no abuse of discretion by the trial court, nor merit to Appellant's first issue regarding his sentence.

In his second issue, Appellant argues that the trial court erred by failing to merge his convictions for burglary and criminal trespass. Appellant specifically asserts that there is no jurisprudence "definitively indicat[ing]

that burglary and criminal trespass do not merge." Appellant's Brief at 51. Appellant further contends that *Commonwealth v. Quintua*, 56 A.3d 399 (Pa. Super. 2012), should be reversed as it expands on the holding of *Commonwealth v. Baldwin*, 985 A.2d 830 (Pa. 2009), to an extreme. *Id.* at 52. Appellant's merger claim is spurious.

The trial court accurately and succinctly recited the applicable legal authority as follows:

> [Appellant] contends th[e trial] court imposed an illegal sentence because burglary and criminal trespass should have merged for purposes of sentencing. He relies on *Commonwealth v. Jones*, 912 A.2d 815 (Pa. 2006), a plurality decision in which our Supreme Court held that the two offenses merged for sentencing. [Appellant's] reliance is misplaced.
>
> In the wake of our Supreme Court's post-*Jones* decision in *Commonwealth v. Baldwin*, 985 A.2d 830 (Pa. 2009), the crimes of criminal trespass and burglary have been found not to merge for purposes of sentencing. *See Commonwealth v. Quintua*, 56 A.3d 399 (Pa. Super. 2012). As such, [Appellant] is not entitled to relief.

Trial Court Opinion, 5/15/15, at 4.

In asserting that "the *Quintua* case should be reversed," Appellant concedes that burglary and criminal trespass do not merge for sentencing purposes, and improperly urges us to reconsider the holding of *Quintua.* *See* Appellant's Brief at 52. This panel lacks the authority to do so. *See Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa. Super. 2013) (one panel of the Superior Court is not empowered to overrule another panel of the Superior Court). Accordingly, Appellant's merger issue fails.

- 11 -

Based on the foregoing, we find Appellant's sentencing and merger issues to be without merit. Accordingly, we affirm the January 12, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015