589 A.2d 726

**COMMONWEALTH of Pennsylvania**

v.

**David DOTTER, II, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 21, 1990.

Filed April 12, 1991.

508

Michael R. Muth, Public Defender, Stroudsburg, for appellant.

E. David Christine, Dist. Atty., Stroudsburg, for Com.

Before WIEAND, DEL SOLE and CERCONE, JJ.

WIEAND, Judge:

David W. Dotter, II, was tried by jury and was found guilty of rape,[1] aggravated assault[2] and involuntary deviate

1. 18 Pa.C.S.A. § 3121(1) & (2).
2. 18 Pa.C.S.A. § 2702(a)(1).

sexual intercourse.[3]  Post-trial motions were denied, and Dotter was sentenced to serve a term of imprisonment for not less than ten (10) years nor more than twenty (20) years for rape and to a consecutive term of imprisonment for not less than five (5) years nor more than ten (10) years for aggravated assault.  The sentencing court did not impose a separate sentence for involuntary deviate sexual intercourse.  A motion to modify sentence was denied.  This appeal followed, in which appellant raises several alleged trial errors and complains of the severity of the sentence.

On March 10, 1989, at or about 9:20 p.m., Barbara Senchak had left her part-time job as a ski instructor at Blue Mountain Ski Area and was traveling south on Route 145 in the direction of Allentown.  When the car in front of her stopped suddenly, Senchak executed a quick stop and avoided hitting the car.  The car behind Senchak, however, failed to stop and hit the rear of Senchak's automobile.  Senchak drove her car to a nearby service station, where she spoke with David Dotter, the driver of the automobile which had struck her vehicle.  Dotter admitted responsibility for the accident, and the parties exchanged identification and relevant information.

Dotter's vehicle was not driveable following the accident and when his passenger was unable to find a ride for the men, Senchak offered to take them home.  After Dotter's passenger had been taken home, Senchak proceeded northwardly on Route 145, with Dotter giving directions.  They proceeded past the turn for Northampton where Senchak had been told Dotter lived.  At the traffic light in Danielsville, Dotter instructed Senchak to turn right.  She did so and thereafter she was directed through numerous turns, onto dirt roads and ultimately into a wooded area.  Senchak recalled a road sign indicating that they had entered Eldred Township, Monroe County.  After driving only a little further, Dotter instructed her to stop in a dark wooded area.  When she applied the brakes, Dotter grabbed the steering wheel with one hand and shifted the car into park with the

3.  18 Pa.C.S.A. § 3123(1) & (2).

other hand. Senchak then tried to get out of the car, but Dotter grabbed her by the neck and ordered her into the passenger's seat. When she complied, Dotter locked the car doors. Senchak again tried to exit the car from the passenger side, but Dotter grabbed her neck in a "head-lock", instructed her that if she did not cooperate "this is what's going to happen to you", and squeezed her neck tightly. He ripped off Senchak's glasses and sweater, tore her bra and ski pants and ordered her to remove her clothing. Dotter then drove the car to another spot, where he ordered Senchak into the back seat and removed his own clothing. Then, with his arms around her body and his hands forcibly clenching her breasts, Dotter performed anal intercourse. When Senchak lost control of her bowels and bladder, Dotter became enraged and hit her in the left eye. He also tied her up, left her naked in the back seat and began driving again toward Allentown. He untied Senchak in a wooded area where he had stopped the car and allowed her to dress after she promised that she would return to him the written accident information and not contact the police. Dotter then returned to Route 145 and, after driving awhile, stopped at a Jiffy Lube to make a telephone call. It was then that Senchak was able to drive away.

██ She drove home immediately and, on the following morning, called Rape Crisis and was sent to the Allentown General Hospital for examination. She was there interviewed for the first time by the police, but she later went to the State Police criminal investigation unit, Bethlehem, Pennsylvania, where she gave an official statement to Trooper Powell. Powell suggested that she write her version of the incident before giving an oral statement. He said that this was a technique used by police in assisting victims of sensitive sexual crimes. After she had made an oral statement, which police recorded, the notes prepared by Senchak were returned to her and not retained by the police.

When this procedure became known at trial, defense counsel moved for a mistrial because a copy of the victim's

original notes had not been provided to the defense during informal, pre-trial discovery. An evidentiary hearing was held, but the motion for mistrial was denied when it became apparent that such notes were not in the possession of the Commonwealth when discovery requests were made. On appeal, Dotter contends that this was error. He argues that he was able neither to prepare adequately nor cross-examine Senchak fully because of the absence of this information.

"It is well established that where the Commonwealth has in its possession pretrial statements of its witnesses which have been reduced to writing and relate to the witness' testimony at trial, it must, if requested, furnish copies of these statements to the defense." *Commonwealth v. Brinkley*, 505 Pa. 442, 449, 480 A.2d 980, 984 (1984), citing *Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1977); *Commonwealth v. Wright*, 289 Pa.Super. 399, 404, 433 A.2d 511, 513 (1981). In the instant case, however, the victim's initial notes were not in the possession of the Commonwealth at the time of the discovery request. They had been returned to Senchak after she made a formal statement. Whether they were still in existence at the time of the trial and, if so, their whereabouts at that time does not appear from the record. Under these circumstances, the trial court did not err in denying a defense motion for mistrial.

█ At trial, the Commonwealth introduced, over defense objection, a series of colored photographs taken of bruises on Senchak's hands, legs, face and breasts on the day following the alleged rape. Appellant contends that it was error to allow the jury to examine photographs of Senchak's naked and bruised breasts because of the inflammatory effect thereof. We reject this argument.

"The question of admissibility of photographs ... is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error." *Commonwealth v. Stein*, 378 Pa.Super. 339, 345, 548 A.2d 1230, 1233 (1988), *allocatur denied*, 521 Pa. 620, 557 A.2d

723 (1989), quoting *Commonwealth v. Buehl,* 510 Pa. 363, 392, 508 A.2d 1167, 1181–1182 (1986). See also: *Commonwealth v. Nauman,* 345 Pa.Super. 457, 459–460, 498 A.2d 913, 914 (1985). The admissibility of photographs is based on a two-tiered analysis.

> The trial judge must initially decide whether the photographs possess inflammatory characteristics. If they do not the photographs are admissible as are any evidentiary items, subject to the qualification of relevance. If the photographs are deemed inflammatory, then the trial judge must decide whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of their inflaming the passions of the jurors. *Commonwealth v. Hudson,* 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980).

*Commonwealth v. Strong,* 522 Pa. 445, 453, 563 A.2d 479, 483 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990). See also: *Commonwealth v. Miller,* 490 Pa. 457, 468–469, 417 A.2d 128, 134 (1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). To be inflammatory "the depiction must be of such a gruesome nature or be cast in such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 281, 372 A.2d 687, 697 (1977).

The photographs in the instant case were neither gruesome nor inflammatory. The testimony was that they were fair and accurate depictions of Senchak's physical condition on the morning after the incident for which appellant was on trial. As such, they were relevant evidence and tended to corroborate Senchak's testimony that appellant had exercised forcible compulsion to achieve sexual satisfaction. See: *Commonwealth v. Nauman, supra.*

■  At trial, Senchak testified over objection that during her ordeal she had believed that appellant was looking for a place to kill her and wondered what her boys would do when she was not home in the morning. Appellant contends that this testimony was irrelevant and prejudicial.

Issues of relevancy must necessarily be left in the first instance to the discretion of the trial court, whose rulings thereon will not be disturbed unless there has been an abuse of that discretion. *Commonwealth v. Gibbs*, 387 Pa.Super. 181, 186–187, 563 A.2d 1244, 1247 (1989), *allocatur denied*, 524 Pa. 625, 574 A.2d 67 (1990); *Commonwealth v. Jackson*, 336 Pa.Super. 609, 619–620, 486 A.2d 431, 437 (1984). Although the issue in the instant case is close, we cannot say that the trial court abused its discretion. Senchak, according to the testimony, was tied up in the back seat of the car while naked as appellant drove her car. Her fears that she might be killed were a part of the ordeal to which she was subjected, and it was not error to permit the jury to know the full nature of appellant's acts or his victim's terror.

■ Appellant's contention that the crime of aggravated assault merged in the crime of rape for sentencing purposes must fail.

[I]f a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Commonwealth v. Weakland*, 521 Pa. 353, 364, 555 A.2d 1228, 1233 (1989).

A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S. § 2702(a)(1). Rape, however, is defined as follows:

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

18 Pa.C.S.A. § 3121(1), (2).

In the instant case, the evidence was that appellant had committed multiple crimes. The crime of rape had been committed when appellant, by threatening Senchak and grabbing her by the neck, ripping her clothing from her and clenching her breasts, had effected anal penetration. It was after this crime had been committed that appellant punched his victim in the left eye. This assault was not an essential part of the crime of rape but constituted a separate criminal act, for which a separate punishment could properly be imposed.

■ The final issue raised by appellant implicates the discretionary aspects of sentencing. In a separate statement complying with Pa.R.A.P. 2119(f), appellant alleges that the trial court abused its discretion in sentencing appellant outside the aggravated range recommended by the Sentencing Guidelines. Specifically, appellant contends that it was error for the court to rely solely on his prior criminal record when sentencing outside the guidelines. Because we deem this a substantial challenge to the appropriateness of the sentence, we will allow his appeal from the discretionary aspects of sentencing.

■ "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 381 Pa.Super. 1, 16, 552 A.2d 1064, 1072 (1988), *allocatur denied*, 524 Pa. 616, 571 A.2d 379 (1989). However, the sentencing court must state its reasons for the sentence on the record, which in turn aids in determining "whether the sentence imposed was based upon accurate, sufficient and proper informa-

tion." *Commonwealth v. Riggins,* 474 Pa. 115, 131, 377 A.2d 140, 148 (1977). When the sentence imposed is outside the sentencing guidelines, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.A. § 9721(b). This requirement is satisfied "when the judge states his reasons for the sentence on the record and in the defendant's presence." *Commonwealth v. Smith,* 369 Pa.Super. 1, 6, 534 A.2d 836, 838 (1987). When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Frazier,* 347 Pa.Super. 64, 67, 500 A.2d 158, 159 (1985). In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. *Commonwealth v. Phillips,* 342 Pa.Super. 45, 51, 492 A.2d 55, 58 (1985). "It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines." *Commonwealth v. Hainsey,* 379 Pa.Super. 376, 382, 550 A.2d 207, 209 (1988). Additionally, the court must impose a sentence which is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." *Commonwealth v. Frazier, supra.* Where the sentencing judge had the benefit of a pre-sentence report, however, it will be presumed that he "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers,* 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988).

■ It is correct, as appellant contends, that a sentencing court may not justify a deviation from the sentencing guidelines solely because of a defendant's prior record score. See: *Commonwealth v. Bartlow,* 354 Pa.Super. 444, 512 A.2d 34 (1986); *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985). This is because the

prior record score has already been incorporated into the guidelines. *Commonwealth v. Darden,* 366 Pa.Super. 597, 606–607, 531 A.2d 1144, 1148–1149 (1987).

In the instant case, however, appellant's prior criminal record was not the sole basis for sentencing outside the guidelines. The transcript of the sentencing hearing makes it clear that the sentencing court considered all necessary statutory sentencing factors, the sentencing guidelines, appellant's character and rehabilitative needs, as well as the seriousness of the offenses and their impact on the community. Moreover, the court had the benefit of and fully considered a pre-sentence report. In deciding to deviate from the sentencing guidelines, the court considered the nature of the criminal acts committed on the victim and the resulting physical harm to her. The court emphasized that the crime had been perpetrated without provocation upon a person who had been acting as a good Samaritan in providing transportation for appellant to his home. The reference to appellant's prior criminal record was to emphasize the failure of prior rehabilitative efforts, since a prior sentence for the same crime of rape had ended only three and one-half (3½) months before the instant offenses. Finally, the sentencing court viewed appellant as a threat which placed women of the community at risk. In deciding to deviate from the guidelines, therefore, the court emphasized that the female community needed protection from appellant.

The Supreme Court has made it abundantly clear that a sentencing court's discretion is broad, and that a reviewing court should not disturb the exercise of that discretion except for substantial reasons. See, e.g.: *Commonwealth v. Ward,* 524 Pa. 48, 568 A.2d 1242 (1990); *Commonwealth v. Jones,* 523 Pa. 138, 565 A.2d 732 (1989). *Commonwealth v. Devers, supra.* Our review discloses no reason to disturb the sentence in this case. The sentencing court considered all necessary factors and adequately explained its reasons for deviating from the guidelines.

The judgment of sentence is affirmed.

DEL SOLE, J., files a concurring statement.

DEL SOLE, Judge, concurring.

I join the Majority in its analysis of all issues in this case save one. I believe that the admission of the victim's testimony wherein she stated that she was thinking about her children, she was wondering what they were going to think in the morning if she was not home, how long it would be before her body was found, and thinking about her family and friends was incorrectly admitted during the trial of this case. However, I believe that any error occasioned by the admission of that testimony was harmless. Therefore, I agree that the judgment of sentence should be affirmed.