J. S40004/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SALVATOR NZO-MISENG, | : | No. 382 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 13, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0002634-2006

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED JULY 14, 2015**

This is an appeal from the judgment of sentence imposed on December 13, 2013, in the Court of Common Pleas of Allegheny County. Following a jury trial, appellant was found guilty of one count of rape, 18 Pa.C.S.A. § 3121(a)(3), one count of involuntary deviate sexual intercourse, 18 Pa.C.S.A. § 3123(a)(3), and one count of sexual assault, 18 Pa.C.S.A. § 3124.1.  Appellant was sentenced to 42 to 84 months' incarceration.  We affirm.

We adopt the facts as summarized by the trial court:

> [M.S.] was a freshman student at LaRoche College in the fall of 2006.  (Trial Transcript p. 109). One evening she visited an acquaintance in his dormitory room and consumed at least four shots of vodka.  (Trial Transcript p. 112).  While she was there, Defendant appeared and started talking to her.  (Trial Transcript p. 113).  At some point, [M.S.]

---

* Retired Senior Judge assigned to the Superior Court.

passed out. (Trial Transcript p. 116). She briefly gained consciousness to find a man on top of her having vaginal sex with her. (Trial Transcript p. 117). She recalled that the man who was engaging in intercourse with her was wearing a black shirt with a red stripe down the sleeve. (Trial Transcript p. 118). This was the outfit Defendant was wearing when he entered the dormitory room. (Trial Transcript p. 118). [M.S.] again lost consciousness. (Trial Transcript p. 119). When she awoke, she was completely naked lying on the floor of her acquaintance's dormitory room. (Trial Transcript p. 119). She quickly gathered her clothes and ran to her room. She immediately showered, then contacted the counselor in the dormitory and reported that she thought she was raped. (Trial Transcript p. 119-22).

[M.S.] then was transported to UPMC Passavant Hospital where she underwent the standard post-rape examination. Susan Hirth, the emergency room nurse who examined [M.S.], testified that the standard procedure for a post-rape examination is fairly invasive. (Trial Transcript p. 184-85). As part of this examination, numerous photographs are taken of all parts of the victim's body where there is evidence of injury. (Trial Transcript p. 185, 191). In this case, Ms. Hirth noticed bruising and abrasions on the right side of her face, and ulceration on her labia. (Trial Transcript p. 185). All of these injuries were photographed and admitted into evidence.

. . . .

Defendant testified at trial and admitted that he had sexual intercourse with [M.S.], however, he maintained that the victim consented to the sexual act.

Trial court opinion, 10/15/14 at 3-5.

Appellant raises the following issues for our review:

> I.  DID THE LOWER COURT ABUSE ITS DISCRETION WHEN IT ADMITTED AN IRRELEVANT AND INFLAMMATORY PHOTOGRAPH OF THE ACCUSER'S GENITALS, CAUSING UNFAIR PREJUDICE AGAINST MR. NZO-MISENG?
>
> II.  WAS THE VERDICT RENDERED CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED WHERE THE ACCUSER ADMITTEDLY LIED TO MEDICAL STAFF DURING HER "RAPE KIT" EXAMINATION, TO THE POLICE DURING THE INVESTIGATION, AND TO THE JURY AT TRIAL REGARDING HER LEVEL OF INTOXICATION?

Appellant's brief at 5.

In his first claim, appellant contends that the trial court abused its discretion in allowing photographs of M.S.'s genital area to be admitted as evidence at trial. Appellant argues that the photographs were inflammatory by their very nature and were irrelevant.

"The admission of photographs is a matter resting with the discretion of the trial court." *Commonwealth v. Tharp*, 830 A.2d 519, 530 (Pa. 2003). In *Commonwealth v. Malloy*, 856 A.2d 767 (Pa. 2004), our supreme court outlined a two-part test for the admissibility of photographs.

> First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury.

*Id.* at 776.

Appellant contends the graphic photos taken during a medical examination did not assist the jury in any factual determination before it. Appellant asserts the only purpose of the photographs from M.S.'s rape kit examination was to improperly inflame the passions and sympathies of the jury, thereby distracting it from the matter actually at issue in the trial.

To be deemed inflammatory, the photograph "must be of such a gruesome nature or be cast in such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant." **Commonwealth v. Dotter**, 589 A.2d 726, 729 (Pa.Super. 1991) (citation and quotation omitted). Having reviewed the Commonwealth's Exhibit 11, we cannot conclude the trial court abused its discretion in determining the photographs were not inflammatory. The colored photographs were taken in a hospital setting. While they are intimate, they are not gruesome or particularly shocking, as the jury, obviously comprised of adults, would be familiar with female genitalia. The photos were were a fair and accurate depiction of M.S's physical condition after the incident. Thus, they were relevant and tended to corroborate M.S.'s testimony.

Additionally, the trial court addressed the evidentiary value of the photographs as follows:

> Prior to admission of this particular photograph, this court viewed the photograph and concluded that it was not prejudicial. Further, this court stated, I don't see a whole lot there. I think you would be able to cross-examine that. I don't see how it is prejudicial. Thus, this photograph fails the

first prong of the **Malloy** test in that it is not an inflammatory photograph. Further, as is noted above, [M.S.] underwent a very invasive post-rape examination. The testimony of the emergency room nurse established that there was an ulceration in the vaginal area of [M.S.] that was found during the rape examination. Given that the victim does not recall with specificity the events of that evening, any evidence of damage to the vaginal area would be highly probative of the facts at issue. Further, the photograph was taken by a medical provider during the course of an examination. As such, it was not inflammatory or prejudicial to such an extent that would cause the jury to be inflamed by its admission. Thus, the relevant photograph was properly admitted.

Trial court opinion, 10/15/14 at 7 (internal citations omitted).

The record indicates M.S. testified that she had not had pain in her vagina prior to the date of this incident, but did have pain after being assaulted.

[The Commonwealth] Did you have any pain in any part of your body?

[M.S.] Yes.

Q.    Where did you feel the pain?

A.    Both my vaginal and rectum area.

Q.    Did you have that pain before September 6, 2005?

A.    No.

Notes of testimony, 7/9/13 at 128.

Emergency Room Nurse Susan Hirth testified regarding the injuries she observed on M.S. during her treatment at the hospital:

> Q. While you are doing the exam for [M.S.], did you notice any injuries to her?
>
> A. Yes. She had bruising, abrasions like on the right side of her face, right cheek, right eyebrow area. And then on the vaginal exam she had like an ulceration on her labia.
>
> . . . .
>
> A. I mean, she complained of discomfort in the vaginal area, but not in the rectum.

*Id.* at 185, 197.

The Commonwealth was permitted to introduce a photograph of the ulceration of the victim's vagina as evidenced by the following:

> Q. I'm going to show you what has been marked as Commonwealth Exhibit 11.
>
> A. This is a picture of her -- we do a close-up and a full body picture. And then the bottom two show the area of the ulceration near her vagina.
>
> Q. Do those pictures fairly and accurately represent what you saw on September 7, 2005, when you examined [M.S.]?
>
> A. Yes.

*Id.* at 192.

Based on the above, we agree with the trial court's reasoning in permitting the photographs to be admitted into evidence.

In his next claim, appellant contends the verdict was against the weight of the evidence. Specifically, appellant asserts the jury gave improper weight to the testimony of M.S., who acknowledged lying to the

police and medical professionals and who did not remember saying "yes" or "no" on the night in question. (Appellant's brief at 27.) This claim lacks merit.

Our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013), ***appeal denied***, 80 A.3d 774 (Pa. 2013).

The record indicates the 18-year-old victim, a college freshman, did not initially tell either the police or hospital personnel that she had been drinking prior to the assault and that she had passed out from alcohol. (Notes of testimony, 7/9/13 at 135-136.) However, she admitted she initially lied and explained that she did so because she was scared and embarrassed.

> [Attorney Shrager]: You have already said to the jury that you don't know why you lied to the police about saying you drank Pepsi?
>
> [M.S.]: I do know why I lied.

> Q.    When I asked you a few minutes ago, what did
> you say?  When I asked you why you lied.
>
> A.    I was scared, embarrassed.

*Id.* at 151.  M.S. was further questioned regarding her reasons for not telling the police she had been drinking:

> [The Commonwealth]:   [M.S.], you indicated you
> didn't tell the police you were drinking when you
> initially spoke to them on September 7, 2005.  Can
> you explain to the jury why you didn't tell them you
> were drinking that particular morning?
>
> [M.S.]:  I was scared, I was embarrassed.  I didn't
> want them to think it was my fault because I was
> drinking.
>
> Q.    Did you ever meet with the detective after that
> day, after September 7?
>
> A.    I think so, yes.  Yes, I did.
>
> Q.    At the subsequent meetings, what did you tell
> him about the drinking on that particular day?
>
> A.    I told him I was drinking.

*Id.* at 175-176.

Based on the above, the jury was informed of the initial false statement concerning the role of alcohol that evening and M.S.'s explanation for being untruthful.  Appellant testified the sex was consensual.  (*Id.* at 277.)  This matter hinged on credibility determinations as to the presence or absence of consent.  Clearly, the jury believed the victim, M.S., to be more credible.  It was within the exclusive province of the finder-of-fact to resolve

conflicts in the testimony and to believe all, part, or none of the evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006), *appeal denied*, 911 A.2d 933 (Pa. 2006). We conclude the trial court did not abuse its discretion in denying the weight of the evidence claim.

The judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2015