J-S14008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS TORRES | : | |
| | : | |
| Appellant | : | No. 1759 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 31, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003340-2017

BEFORE:  BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 26, 2020**

Carlos Torres appeals from his judgment of sentence of twenty to forty years of imprisonment imposed after he was convicted of third-degree murder and conspiracy.  We affirm.

Succinctly, the underlying facts are as follows.  Appellant was in a long-term relationship with Carmen Ramos that ended in early 2017.  A few weeks later, Ms. Ramos began dating Francisco Velazquez ("the victim").  Appellant sent text messages to Ms. Ramos threatening the victim.  When Appellant encountered the victim at Hoagie City shortly thereafter while on a phone call, Appellant confronted him, left the store, and waited outside for the victim to exit.  Appellant attacked the victim when he exited Hoagie City, then pursued the victim when he fled.  Appellant reinitiated the attack joined by his friend, Timothy Walker.  Appellant and Walker proceeded to beat the victim to death.

All of this was captured on video. Appellant made another call from the back of the police car, to his friend Walker.

Appellant was arrested and charged with murder, conspiracy, and possessing an instrument of crime ("PIC"). Appellant elected to waive his right to a jury trial, and proceeded to a bench trial on January 22 and 23, 2019. The trial court found Appellant guilty of third-degree murder and conspiracy, but acquitted him of PIC, and ultimately imposed concurrent sentences of twenty to forty years of incarceration on the two convictions.[1] Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions, which we have re-numbered for ease of disposition:

> 1. Was the evidence presented at trial insufficient to support a conviction for third degree murder and conspiracy where the Commonwealth failed to prove an agreement between the Appellant and his co-defendant?
>
> 2. Notwithstanding all the facts, did the trial court err in convicting the Appellant of third degree murder and conspiracy where the trial court placed too much weight on a phone call between the Appellant and his co-defendant in order to find a criminal agreement to assault the victim. . . ?
>
> 3. Did the trial court abuse its discretion by imposing a manifestly excessive and unreasonable sentence of 20 to 40 years' incarceration for third degree murder and conspiracy which was above the sentencing guidelines without adequately considering the co-defendant's . . . sentence, the Commonwealth's

---

[1] Appellant filed a timely post-sentence motion challenging, *inter alia*, the weight of the evidence and the discretionary aspects of his sentence.

recommended sentence and Appellant's role in the offense, history, background and remorse in violation of the sentencing code?

4. Did the trial court abuse its discretion by imposing a manifestly excessive and unreasonable sentence of 20 to 40 years' incarceration for third degree murder and conspiracy which was above the sentencing guidelines without considering and providing adequate reasons on the record for the deviation from the sentencing code?

Appellant's brief at 5-6 (unnecessary capitalization omitted).

The following informs our review of Appellant's claims of error. As to

Appellant's sufficiency challenge, we bear in mind:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017)

(citations and quotation marks omitted).

Appellant's claim that the verdict was against the weight of the evidence

is governed by the following principles.

Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether

- 3 -

the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [of whether] the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).[2]

As to review of Appellant's sentencing challenge, we observe:[3]

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to

_____

[2] The same standard applies where, as in the case *sub judice*, the trial court considering the motion was the fact-finder at trial. *See*, *e.g.*, *Commonwealth v. Lineman*, 219 A.3d 684, 689 (Pa.Super. 2019), *appeal granted in part on other grounds*, 223 A.3d 669 (Pa. 2020).

[3] Appellant challenged the discretionary aspects of his sentence in his post-sentence motion, and his brief includes a statement pursuant to Pa.R.A.P. 2119(f) wherein he asserts that his claim presents a substantial question that the court violated the sentencing code. *See* Appellant's brief at 13. We agree. *See*, *e.g.*, *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa.Super. 2010) (finding substantial question raised by unexplained disparity between codefendants' sentences); *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa.Super. 2008) ("We find that Appellant's contention that the sentencing court exceeded the recommended range in the Sentencing Guidelines without an adequate basis raises a substantial question for this Court to review.").

the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Kitchen***, 162 A.3d 1140, 1146 (Pa.Super. 2017) (cleaned up). Additionally, we note that where, as in the instant case, the trial court had the benefit of a presentence investigation report, it is presumed to have considered all the relevant sentencing factors. ***See***, ***e.g.***, ***Commonwealth v. Clemat***, 218 A.3d 944, 960 (Pa.Super. 2019).

After a thorough review of the certified record, the parties' briefs and the pertinent law, we discern no error of law or abuse of discretion on the part of the trial court as to the issues raised by Appellant, and we affirm the judgment of sentence for reasons stated in the cogent and well-reasoned opinion that Honorable J. Scott O'Keefe entered on August 12, 2019.

Specifically, Judge O'Keefe observed that the law and the evidence, including reasonable inferences therefrom viewed in the light most favorable to the Commonwealth, supported the finding Appellant and Walker acted with shared criminal intent when they jointly attacked the cornered victim, rather than independent of one another,[4] and that their concerted beating resulted

---

[4] ***Compare Commonwealth v. Thomas***, 65 A.3d 939, 946 (Pa.Super. 2013) (deeming the evidence of conspiracy to commit aggravated assault sufficient where the defendant "was with a group of four other individuals who repeatedly kicked and punched the victim, causing her to collapse to the ground, where they continued their attack"), ***with Commonwealth v. Chambers***, 188 A.3d 400, 412 (Pa. 2018) (finding insufficient evidence of conspiracy where none of the defendant's cohorts became involved in his one-

- 5 -

in his death. *See* Trial Court Opinion, 8/12/19, at 6-10. The trial court likewise properly considered Appellant's weight-of-the-evidence challenge and acted within its discretion in concluding that the verdict was not shocking to the conscience. *Id*. at 12. Finally, Judge O'Keefe supported the propriety of Appellant's sentence[5] by discussing how he reviewed and considered the relevant information, including the presentence report, Appellant's background and rehabilitative needs, and Appellant's increasingly serious criminal violence, and imposed a sentence that was within (albeit at the top of) the guideline recommendations.[6] *Id*. at 14-15. As to the foregoing points, we adopt Judge O'Keefe's reasoning as our own.

_____

on-one battle with the victim until the victim's girlfriend intervened on his behalf, and the defendant's cohorts got involved to try to break up the fight).

[5] We do not adopt Judge O'Keefe 's opinion to the extent that it suggests that Appellant failed to raise a substantial question. *See* Trial Court Opinion, 8/12/19, at 13.

[6] Appellant acknowledged that, with a prior record score of three, and the offense gravity score was fourteen, the guidelines recommended a sentence of 120 months to the statutory maximum. *See* N.T. Sentencing, 5/31/19, at 7. *See also* 204 Pa. Code § 303.16(a) (indicating standard range sentence for Appellant is 120 months to the statutory limit). The statutory maximum for Appellant's murder and conspiracy convictions was twenty to forty years of imprisonment. *See* 18 Pa.C.S. § 1102(c), (d). Hence, Appellant's claim that the trial court sentenced outside the guidelines is belied by the record.

Furthermore, as the trial court noted, the evidence showed or suggested that it was Appellant who was jealous of the victim, who planned the attack, and who contacted his codefendant to coordinate the assault. *See* N.T. Sentencing, 5/31/19, at 25. As such, Appellant's complaint that the trial court failed to consider Appellant's role in the offense and impose an individualized

Judgment of sentence affirmed.


Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/26/2020</u>

---

sentence is likewise unsupported by the record—the imposition of a greater sentence than that of his codefendant is the epitome of individualized sentencing. **Accord Commonwealth v. Ali**, 197 A.3d 742, 765 (Pa.Super. 2018) (holding record reflected that the trial court offered sufficient reasons for the defendant's sentence and justification for disparity from those of codefendant).

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CRIMINAL TRIAL DIVISION** |
| | : | |
| | : | |
| **Vs.** | : | **1759 EDA 2019** |
| | : | |
| | : | |
| **CARLOS TORRES** | : | **CP-51-CR-0003340-2017** |

## O P I N I O N

**O'KEEFE, J.**

Carlos Torres appeals his sentence of twenty to forty years' incarceration following his convictions of third degree murder and criminal conspiracy. The defendant contends that there was insufficient evidence presented at his jury trial, that the verdict was against the weight of the evidence and that the sentence was excessive.

## PROCEDURAL HISTORY:

On March 2, 2017, the defendant was arrested and charged with murder, criminal conspiracy and possessing an instrument of crime. Appellant was bound over for trial on all charges following an April 28, 2017 preliminary hearing. A bench trial commenced on January 23, 2019, with Torres being convicted of murder of the third degree and criminal conspiracy but acquitted of the charge of possessing the instrument of a crime. The defendant was sentenced to a concurrent term of twenty to forty years' incarceration, for both murder of the third degree and conspiracy, the subject of this appeal.

## STANDARD OF REVIEW:

For a claim of insufficiency of the evidence an appellate court must view the evidence in a light most favorable to the Commonwealth as the verdict winner and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime beyond a reasonable doubt. *See Commonwealth v. McCalman*, 795 A.2d 412 (Pa.Super. 2002).

A claim that the verdict is against the weight of the evidence requires that the court examine the record to determine whether the fact finder's verdict was so contrary to the evidence as to shock one's sense of justice and thereby mandate the granting of a new trial. *Commonwealth v. Habay*, 934 A.2d 732 (Pa.Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008). Whether or not a new trial should be granted on the grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court, whose decision will not be reversed absent a showing of an abuse of discretion. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994).

When reviewing a claim of an improper or excessive sentence, the standard of review is that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Johnson*, 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Dotter*, 403 Pa.Super. 507, 516, 589 A.2d 726 (1991)).

## FACTS:

For eight years, the defendant, Carlos Torres, and Carmen Ramos lived together in an intimate relationship, which terminated in late January, early February of 2017. (N.T. 1-22-2019, pp. 11-18). Around mid-February Ms. Ramos began seeing Francisco Velazquez. (N.T. 1-22-2019,

2

pp. 17-18). When the appellant discovered that his former paramour was dating Mr. Velazquez he became extremely upset. (N.T. 1-22-2019, pp. 18-20). In the early afternoon of March 2nd, the defendant and Carlos Velazquez ran into each other inside Hoagie City, a local hang-out located at 5th and Lehigh Streets in Philadelphia. (N.T. 1-22-2019, pp. 22-23, 30-32). About three hours later, Velazquez and Ms. Ramos were back in the area of 5th and Lehigh when the decedent got out of Ramos' car and returned to Hoagie City. (N.T. 1-22-2019, pp. 18-20, 53-54). Surveillance of the events that occurred inside and outside Hoagie City as well as other businesses in the immediate area was presented in the defendant's trial. The video clearly depicts the defendant confronting Velazquez inside Hoagie City where a short verbal exchange ensues. (N.T. 1-22-2019, pp. 44-45, 55-58). Torres then leaves the store, waiting outside for Velazquez to exit. The decedent is hesitant to go out the door, but eventually departs. Upon leaving, Velazquez is attacked by the defendant. Velazquez tries to leave the area, but is pursued for two blocks by the defendant, heading west on Lehigh Avenue, across 5th Street up to the corner of Fairhill and Lehigh Streets, where Velazquez is physically attacked by the defendant. (N.T. 1-22-2019, pp. 44-46, 56-61). While the two are brawling, Timothy Walker joins in the beating, grabbing and slamming Velazquez twice with a barricade. (N.T. 1-22-2019, pp. 58-61). Velazquez falls to the ground and while there, this defendant continues beating the decedent, punching and kicking Velazquez in the head. After this defendant delivers a vicious kick to the decedent's head, Velazquez stops any movement, just lying on the ground, while being further beaten by Torres. (N.T. 1-22-2019, pp. 61-65).

Officer Todd Gittel responded to a radio call about the fight, finding Francisco Velazquez lying on the ground, fading in and out of consciousness, unable to talk. (N.T. 1-22-2019, pp. 65-66). After calling rescue to attend to the victim, the officer put the defendant in the back of his

3

patrol car. Officer Gittel testified that heard the defendant talking on his cell phone, saying "Tim, don't let me go down for this, you got to come back." (N.T. 1-22-2019, p. 66). Officer Juan Fernandez testified that several days later, he attempted to serve an arrest warrant on the defendant for this case and that when he knocked on the defendant's door, Torres jumped out the back window and unsuccessfully tried to run away, travelling east on York Street. (N.T. 1-23-2019, pp. 8-11, 17-18). The officer further testified that while transporting the defendant to the police station, Torres told the officers that "I didn't do all the damage. It was my friend, Timothy Walker." (N.T. 1-23-2019, pp. 13-16). In addition, Assistant Medical Examiner Victoria Sorokin testified that Francisco Velazquez died of blunt impact injury to the head and the manner of death was homicide. (N.T. 1-23-2019, pp. 21-30).

Detective Thorsten Lucke was presented during the trial, testifying that he recovered the video from Hoagie City as well as several businesses along Lehigh Avenue. (N.T. 1-22-2019, pp. 42-45, C- 51, 52, 77). The entire beating of Mr. Velazquez, from inside Hoagie City to out the front door and west on Lehigh Avenue was captured on video and admitted into evidence during Torres' trial. Additionally, Detective Lucke testified that he performed a cellphone extraction from the phone with the number that was attributed to Ms. Ramos. Included in the extraction were text messages from a cell phone bearing the number 215-800-3174, which Ramos' phone associated with the name "Carlos". (N.T. 1-22-2019, pp. 47-52). The relevant testimony concerning the texts from March 2nd 2017 are:

> "Your Honor, I'm starting from the top. Again, these are all from March 2nd, 2017. Start with the first message at 12:54 p.m. Content is, "How can you hurt me like that, drive down Lawrence Street with him. You know I'm right" – I'm going to read it out, so I apologize for my language – "fuck this bullshit. You really got that, but I still love you regardless. Enjoy."
>
> Next message in this report, Your Honor, at 3:45 p.m. "You got fucking balls, Linda, but I will catch him. Trust me. Nothing

4

but respect. Not about you. Fuck. You live yours. I live mine. Fuck you. I've had it."

3:53 p.m., Your Honor. "You're a liar. That's why you doing what you doing. I'll go look Gail (phonetic), but with respect."

4:05 p.m. "Why he not here. What's up? What, he's scared to fight like a man? I right (sic) for mine, but I forgot you're not mine anymore."

4:21 p.m. "Tell him to come get your IR."

6:24 p.m. "Keep calling him. He laid out."

6:27 p.m. "Don't call me. I'm going to jail beating his ass. He swung first."

(N.T. 1-22-2019, pp. 51-52).

## LEGAL DISCUSSION:

### *Insufficiency of the Evidence*

Appellant's first claim of error is that there was insufficient evidence presented at trial to find him guilty of any of the charges to which he was convicted. When evaluating a claim of insufficiency of the evidence, we must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). Further, the evidence must be viewed "in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.* "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Thomas,* 65 A.3d 939, 943 (Pa.Super. 2013) (citing *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007)).

Under a sufficiency of the evidence claim, "the Commonwealth may sustain its burden by

5

means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence." *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 517 (2005) (quoting *Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1211 (2003)). "Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bohonyi*, 900 A.2d 877, 881-882 (Pa.Super. 2006) (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1283 (Pa.Super. 2006)). However, if the evidence "is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Commonwealth v. Heater*, 899 A.2d 1126, 1131 (Pa.Super.2006) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)).

To sustain a conviction for third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought, that the defendant recklessly, knowingly or intentionally caused the victim's death. "This Court has long held that malice comprehends not only a particular ill-will, but ... [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Fisher*, 622 Pa. 366, 375, 80 A.3d 1186, 1191 (2013) (citing *Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (2005); *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868)). Third degree murder "is an intentional act, characterized by malice, that results in death, intended or not." *Commonwealth v. Fisher, supra*, 622 Pa. at 376, 80

6

A.3d at 1191. Furthermore, the fact-finder may infer malice by considering the totality of the circumstances. *Commonwealth v. Thomas*, 440 Pa.Super. 564, 656 A.2d 514, 516 (1995).

In order to sustain a conviction for criminal conspiracy, the prosecution must establish that the defendant entered into an agreement to commit or aid in an unlawful act with another person(s) with the shared criminal intent and an overt act was done in furtherance of the conspiracy. *Commonwealth v. Fisher, supra* (quoting *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1030 (1996)). The agreement necessary for a conspiracy need not be stated in words, it may be unspoken, but acknowledged. Therefore, a conspiracy conviction will be sustained if the Commonwealth established that the defendant entered into an agreement to commit or aid in an unlawful act with another person with a shared criminal intent and an overt act was done in furtherance of the conspiracy. *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa.Super.2002), *app. denied*, 569 Pa. 701, 805 A.2d 521 (2002) (citing *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025, 1030 (1996)). "The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished." *Commonwealth v. Lambert, supra*, 795 A.2d at 1016 (citing *Commonwealth v. Keefer*, 338 Pa.Super. 184, 487 A.2d 915, 918 (1985)). "Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient." *Id.* Rather, the Commonwealth must prove that the defendant shared the criminal intent; that he was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Commonwealth v. Lambert, supra*, 795 A.2d at 1016 (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000)). The defendant himself does not need to commit the overt act, rather the overt act could be committed by a co-conspirator. *Commonwealth v. Lambert, supra*, 795 A.2d at 1016 (citing *Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa.Super.1998) *(en banc)*, *app. denied*, 559 Pa. 689, 739 A.2d 1056 (1999)).

7

Circumstantial evidence is almost always used to prove a conspiracy. *Commonwealth v. Lambert, supra,* 795 A.2d at 1016 (citing *Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 636 A.2d 1173, 1176 (1994)). "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt" *Commonwealth v. Lambert, supra,* 795 A.2d at 1016 (quoting *Commonwealth v. Johnson, supra,* 719 A.2d at 785). "The evidence must, however, 'rise above mere suspicion or possibility of guilty collusion.'" *Lambert, supra,* 795 A.2d at 1016 (quoting *Commonwealth v. Swerdlow,* 636 A.2d at 1177). The Pennsylvania Superior Court has identified factors to be considered when examining a conspiracy charge as follows:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert, supra,* 795 A.2d at 1016 (quoting *Commonwealth v. Olds,* 322 Pa.Super. 442, 469 A.2d 1072, 1075 (1983)) (internal citations omitted).

If there is evidence of the presence of a conspiracy to commit a crime, conspirators are liable for acts of their co-conspirators committed in the furtherance of the conspiracy. *Commonwealth v. Lambert, supra,* 795 A.2d at 1016 (citing *Commonwealth v. Stocker,* 424 Pa.Super. 189, 622 A.2d 333, 342 (1993)). Even if a conspirator did not act as a principal in committing the underlying crime, he will still be criminally liable for the actions of the co-conspirators taken in furtherance of the conspiracy. *Commonwealth v. Lambert, supra,* 795 A.2d at 1016 (citing *Commonwealth v. Soto,* 693 A.2d 226, 2929-230 (Pa.Super.1997), *app. denied,* 550 Pa. 704, 705 A.2d

8

1308 (1997)). The general rule of law relating to the culpability of conspirators to commit a crime is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy and all co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action. *Common-wealth v. Lambert, supra*, 795 A.2d at 1016-1017 (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (Pa.Super.2001)). "The premise of the rule is that the conspirators have formed to-gether for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act under-taken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that 'is the *sine qua non* of a conspiracy.'" *Commonwealth v. Lambert, supra*, 795 A.2d at 1017 (citing *Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456, 463-464 (Pa. 1998), *cert. denied*, 528 U.S. 834, 120 S.Ct. 94, 145 L.Ed.2d 80 (1999)).

It is clear that a conspiracy existed in the current case from the relationship between the co-conspirators, the acts of both individuals in the coordinated attack on the decedent as well as the circumstances surrounding the incident, and that conclusion was beyond a reasonable doubt. This defendant was talking on his phone with someone while in Hoagie City. After the confron-tation, this defendant waited outside the eatery for the decedent to come out. Another confronta-tion occurred outside of the shop, but then, Torres followed the decedent two blocks and only moved in to attack Velazquez when he got to Lehigh and Fairhill Streets, where Mr. Walker was already situated. Torres and Walker then committed a coordinated attack upon Velazquez, Walker

9

hitting him with the barricade while the defendant was punching and kicking the decedent. Additionally, the officer who detained the defendant testified that this defendant called his co-conspirator – Timothy Walker after the killing of the decedent and told Walker to come back and take responsibility for the assault. It was crystal clear that this defendant and Timothy Walker conspired to attack Mr. Velazquez and as such there was more than sufficient evidence upon which to find this defendant guilty of both murder of the third degree and criminal conspiracy. Both men agreed to engage in the intentional, malicious attack upon Velazquez, without regard to the consequences of that attack. As their actions resulted in Velazquez's death, the convictions for both third degree murder and conspiracy were appropriate. Accordingly, this claim of the appellant must fail.

### *Weight of the Evidence*

A claim that the verdict was contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Marks,* 704 A.2d 1095, 1098 (Pa. Super. 1997) (citing *Commonwealth v. Simmons,* 541 Pa. 211, 229, 662 A.2d 621, 630 (1995)). A defendant's request for a new trial based on the argument that the verdict was against the weight of the evidence will only be granted when the verdict is so contrary to the evidence as to make the award of a new trial imperative. *Commonwealth v. Mason,* 559 Pa. 500, 513, 741 A.2d 708, 715 (1999); *Commonwealth v. Auker,* 545 Pa. 521, 541, 681 A.2d 1305, 1316 (1996).

Addressing the defendant's weight of the evidence argument, it must be noted that "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the

10

trial court" *Commonwealth v. Rossetti,* 863 A.2d 1185, 1191 (Pa.Super.2004) (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751-752 (2000)). The Pennsylvania Supreme Court has explained that appellate review of a weight of the evidence claim is a review of the exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Id.* "A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Commonwealth v. Dupre,* 866 A.2d 1089, 1101 (Pa.Super.2005) (quoting *Commonwealth v. Sullivan,* 820 A.2d 795, 805-806 (Pa.Super.2003), *app. denied,* 574 Pa. 773, 833 A.2d 143 (2003) (emphasis omitted). A new trial should be awarded when the trial court believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Commonwealth v. Lloyd,* 878 A.2d 867, 872 (Pa.Super.2005) (citing *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (Pa 1985)). "Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (emphasis omitted). Stated another way, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court" *Commonwealth v. Dupre, supra,* 866 A.2d at 1102 (quoting *Commonwealth v. Sullivan, supra,* 820 A.2d at 805-806). "The question the trial court must answer, in the sound exercise of its discretion, is whether 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice'" *Id.* (citing *Commonwealth v. Widmer, supra,* 744 A.2d at 752). Because the trial judge heard and saw the evidence presented,

11

an appellate court will give the gravest consideration to the findings and reasons advanced by the trial court concerning a weight of the evidence determination. *Commonwealth v. Dupre, supra,* 866 A.2d at 1102 (citing *Commonwealth v. Widmer, supra,* 744 A.2d at 753). "A trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is 'one of the least assailable reasons for granting or denying a new trial.'" *Commonwealth v. Dupre, supra,* 866 A.2d at 1102 (citing *Commonwealth v. Sullivan, supra,* 820 A.2d at 806; *Commonwealth v. Widmer, supra,* 744 A.2d at 753). When the weight of the evidence challenge is predicated on the credibility of testimony presented at trial, appellate review of the trial court's decision is extremely limited. *Commonwealth v. Rossetti, supra,* 863 A.2d at 1191 (quoting *Commonwealth v. Hunter,* 381 Pa.Super. 606, 554 A.2d 550, 555 (1989)). "Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id.*

This court applied the appropriate standards when reviewing Defendant's claim that the verdict was against the weight of the evidence. Having reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits, this court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice. The evidence was not so tenuous, vague and uncertain that the verdict shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict. The vast majority of the incident was caught on surveillance video, including the entirety of the fatal attack at Fairhill and Lehigh Streets. Accordingly, this claim of the defendant is without merit.

12

## Excessive Sentence

Defendant asserts that his sentence was 'manifestly excessive, above the guidelines and the consecutive/aggregate sentence failed to take into consideration necessary sentencing factors including mitigation including but not limited to the Defendant's role in the offense, the pre-sentence investigation report, the Pennsylvania Sentencing Guidelines, the Defendant's background and remorse, his family support and the sentence of his co-defendant.' (Defendant's Statement of Matters Complained of on Appeal, p. 5). The law is clear that mere assertions of excessiveness do not raise a substantial question for review. *Commonwealth v. Zeigler*, 112 A.3d 656 (Pa.Super. 2015); *Commonwealth v. Dodge*, 77 A.2d 1263, 1269-1270 (Pa.Super. 2013); *Commonwealth v. Koehler*, 558 Pa. 334, 737 A.2d 225 (1999); *Commonwealth v. Ahmed*, 961 A.2d 884 (Pa.Super. 2008); *Commonwealth v. Moury*, 992 A.2d 162, 171-172 (Pa.Super. 2010). Although a determination of what constitutes a substantial question must be evaluated on a case-by-case basis, a substantial question exists only when the defendant advances a colorable argument that the sentence was inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015).

Addressing the issue on the merits, it is well-settled that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Johnson*, 446 Pa.Super. 192, 197, 666 A.2d 690, 693 (1995) (quoting *Commonwealth v. Dotter*, 403 Pa.Super. 507, 516, 589 A.2d 726 (1991)). "To be a manifest abuse of discretion, a sentence must either exceed the statutory limits or be manifestly excessive. The discretion of a trial judge must be accorded great weight because he is in the best position to weigh such factors as the nature of the crime, the defendant's character, and

13

the defendant's displays of remorse, defiance, or indifference." *Commonwealth v. Minnott*, 395 Pa.Super. 552, 554, 577 A.2d 928, 929 (1990). "Our Supreme Court has held that where a pre-sentence report exists, we shall 'presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors.'" *Commonwealth v. McKiel*, 427 Pa.Super. 561, 565, 629 A.2d 1012, 1013-14 (1993) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988)). "Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed." *Id.*

The undersigned reviewed the pre-sentence reports on the defendant, along with all of the evidence presented, and considered numerous factors, such as the nature of the crime, the defendant's background, the likelihood of rehabilitation and the need for the public to be protected from this behavior by the defendant again. The sentence imposed on appellant took into account all of those considerations. *See Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa.Super. 2002); *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa.Super. 1998). After reviewing the pre-sentence investigation reports, this court sentenced the defendant to an aggregate sentence of twenty to forty years' incarceration with both the murder and conspiracy sentences running concurrently. Torres produced no evidence that the sentence imposed was either inconsistent with a specific provision of the sentencing code or contrary to the fundamental norms which underlie the sentencing process and as such, there is no substantial question. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). This court examined the defendant's background, character and rehabilitative needs, and the pre-sentence investigation report detailed the relevant information regarding these factors, all of which was considered.

A look at Torres' past criminal conduct is clearly in order. As a juvenile, the defendant

14

had two juvenile adjudications. As an adult, Mr. Torres has seven arrests with five convictions and at the time of this murder, he was on probation for simple assault and enrolled in anger management classes as a condition of that probation. The defendant's prior record score was a four, making the guideline minimum range sentence for both the third degree murder and the conspiracy one hundred sixty-eight to two hundred and forty months, plus or minus twelve months. Mr. Torres was sentenced within the guideline range.

As noted earlier, the sentencing court will only be reversed upon a showing of manifest abuse of that discretion. *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 784-85 (Pa.Super. 2015); *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014). An abuse of discretion in sentencing "is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Raven, supra* at 1253 (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006)). The court reviewed the presentence investigation report, considered all of the testimony and arguments of counsel and imposed a sentence within the applicable guideline range and as such the defendant's claim is without merit.

Accordingly, the judgment of sentence of this court should be affirmed.

BY THE COURT:

Date: August 9, 2019

J. SCOTT O'KEEFE, J.

15

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :     CRIMINAL TRIAL DIVISION

            :

            :

            :

Vs.            :     1759 EDA 2019

            :

            :

CARLOS TORRES            :     CP-51-CR-0003340-2017

## Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney:     Michael N. Huff, Esquire
1333 Race Street
Philadelphia, PA 19107

Type of Service:     ( ) Personal (**X**) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:     Lawrence Jonathan Goode, Esquire
Chief – Appeals Division
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107-3499

Type of Service:     ( ) Personal ( ) First Class Mail (**X**) Interoffice ( ) Other, please specify

Date: August 12, 2019

_Allison M. O'Keefe_
Allison M. O'Keefe, Law Clerk

16